United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 9, 2003**

Charles R. Fulbruge III
Clerk

Revised December 23, 2003

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No.  02-41571

TROY KUNKLE,

Petitioner-Appellant

VERSUS

DOUG DRETKE, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE,
INSTITUTIONAL DIVISION,

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, DAVIS, and JONES, Circuit Judges.

DAVIS, Circuit Judge:

Petitioner, Troy Kunkle (Kunkle),  was convicted of capital murder in Texas and sentenced to death.  He now seeks a Certificate of Appealability (COA) from the district court's denial of habeas corpus relief.  We grant Kunkle's request for a COA on his claim of ineffective assistance of counsel.  After examining the merits of this claim, we conclude that the district court did not err in

-1-

finding it was unexhausted. We also conclude that the Kunkle failed to demonstrate that he suffered prejudice from counsel's performance. With respect to Kunkle's remaining claims, we deny his application for COA because he has failed to make a substantial showing of a denial of a constitutional right.

## I.

On the night of August 11, 1984, Kunkle and his girlfriend Lora Lee Zaiontz, Russell Stanley, Aaron Adkins, and Tom Sauls, left San Antonio and drove to Corpus Christi. All five were under the influence of alcohol and L.S.D. While en route, Stanley removed a .22 caliber pistol from the glove compartment of the vehicle, fired it into the air, and asked Adkins if he wanted to make some money. Sauls told Stanley that "guns and acid don't mix," and Stanley returned the gun to the glove compartment. During the course of the trip, Stanley took out the gun several more times. Stanley and Adkins discussed committing a robbery and slowed the vehicle several times to assess potential victims.

When the group arrived in Corpus Christi, they drove to the beach. Kunkle and Zaiontz kept to themselves. Stanley, Adkins and Sauls went for a walk, and Stanley and Adkins again discussed robbing someone. The group left the beach and went to a convenience store to buy beer. There, Stanley and Adkins robbed a man in a phone booth at gunpoint, while Kunkle, Zaiontz, and Sauls remained in the car. Stanley and Adkins obtained only seven dollars from this victim, so they left the store to search for

-2-

another victim.  They spotted Stephen Horton walking along the road.  They pulled up next to Horton, and Zaiontz asked him if he needed a ride.  Though he resisted at first, Horton was eventually persuaded to get into the car.  Horton sat in the front seat, next to Zaiontz.

Once inside the car, Stanley put the gun to the back of Horton's head and told him to give them his wallet.  Horton turned to look at Stanley, but Zaiontz scratched his face and told him to look forward.  Kunkle told Stanley to kill him, but Stanley refused.  Kunkle then took the gun from Stanley, put it to Horton's head, and said, "We're going to take you back here and blow your brains out."  Adkins drove the car behind a skating rink, and Kunkle shot Horton in the back of the head.  They pushed his body out of the car, and Zaiontz took his wallet.  After the shooting, Kunkle quoted the following line from a song: "another day, another death, another sorrow, another breath," and told the group that the murder was "beautiful."

On February 22, 1985, a jury convicted Kunkle for the capital murder of Horton.  He was sentenced to death on February 26, 1985.  Kunkle's conviction and sentence were affirmed on direct appeal.  *Kunkle v. State*, 771 S.W.2d 435 (Tex. Crim. App. 1986).  The Supreme Court denied certiorari.  *Kunkle v. Texas*, 492 U.S. 925, 109 S.Ct. 3259, 106 L.Ed.2d 604 (1989).

Kunkle filed a state habeas petition in July 1989.  After

hearing argument from counsel, the state habeas judge determined that an evidentiary hearing was not necessary, and recommended the denial of habeas relief.  The Court of Criminal Appeals accepted the recommendation and denied relief.  *Ex parte Kunkle*, 852 S.W.2d 499 (Tex.Crim.App. 1993).

In August 1993, Kunkle filed his first federal habeas petition pro se.  He was later appointed counsel who then filed an amended petition in March 1994.  In January 1995, this petition was dismissed without prejudice for failure to exhaust some of the claims in state court, and the case was closed.  Kunkle filed another state habeas petition asserting the claims the district court specified as unexhausted.  This petition was denied.

In April 1995, Kunkle filed an amended petition in federal court.  However, he filed it under the old case number instead of initiating a new suit.  No action was taken on this petition for several years.  In July 2001, an order was issued under a new case number indicating that the amended petition would be treated as a new petition, filed in April 1995, and ordering the clerk of court to file a copy of the petition under the new case number.  The State filed its response and moved for summary judgment.  In September 2002, the federal district court denied habeas relief and refused to issue a COA.  Kunkle now seeks a COA from this court.

II.

Kunkle filed the instant Section 2254 petition in April 1995,

-4-

before the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). As such, this court must apply pre-ADEPA law in reviewing the district court's ruling. *Slack v. McDaniel*, 529 U.S. 473, 480, 120 S.Ct. 1602, 146 L.Ed.2d 542 (2000). However, where an appeal from a denial of a petition of habeas corpus is commenced after the effective date of the AEDPA, post-AEDPA law governs the right to appeal. *Id*. Kunkle filed a notice of appeal in the instant case on November 1, 2002. Therefore, the AEDPA amended version of 28 U.S.C. § 2253 controls Kunkle's right to appeal. Before an appeal may be entertained, a prisoner who was denied habeas relief in the district court must first obtain a COA from a circuit judge. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322,123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003). Until a COA has been issued, a federal appeals court lacks jurisdiction to rule on the merits of a habeas appeal. *Miller-El*, 123 S.Ct. at 1039. To obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. 2253(c)(2). To make such a showing, the petitioner must demonstrate "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack*, 529 U.S. at 484, 120 S.Ct. 1595 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983)). The question of whether a COA should issue

is a threshold inquiry that "requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El*, 123 S.Ct. at 1039. A full consideration of the merits is not required, nor permitted, by § 2253(c). *Id.* The fact that a COA should issue does not mean that the petitioner will be entitled to habeas relief because the "question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 1042.

Under pre-AEDPA standards of review, this court will review the legal conclusions of the district court de novo and the state court's findings of fact for clear error. *See Soffar v. Cockrell*, 300 F.3d 588, 592 (5th Cir. 2002) (en banc). This court must accord a presumption of correctness to all findings of fact if they are supported by the record. *Id.; see* 28 U.S.C. § 2254(d) (1995) (current version at 28 U.S.C. § 2254(e)(1) (2003). The pre-AEDPA standards do not require a federal court to defer to the state court's legal conclusions. *See Valdez v. Cockrell*, 274 F.3d 941, 949 (5th Cir. 2001) (citing *Thompson v. Keohane*, 516 U.S. 99, 111-12, 116 S.Ct. 457, 113 L.E.D.2d 383 (1995)).

### III.

Kunkle first argues that his due process rights were violated because the trial court ordered only a partial transcript of the voir dire. On direct appeal, the only error asserted by Kunkle was that the trial court improperly denied his motion challenging the

State's death qualifying questions in jury selection. For the purpose of appellate review, Kunkle's trial counsel, who also represented Kunkle on direct review, requested the entire voir dire examination of the jury panel be transcribed. The trial court denied this request, instead ordering that the transcription be limited to the general statements and questions of the trial court and the parties and the individual voir dire of six potential jurors. The trial court did, however, state that other portions of the voir dire would be transcribed "for good cause shown."

Kunkle contends that the Constitution requires the State to provide an indigent defendant with a complete transcript of voir dire, free of charge. In *Griffin v. Illinois*, 351 U.S. 12, 19-20, 76 S.Ct. 585, 100 L.Ed. 891 (1956), the Supreme Court held that the Due Process and Equal Protection clauses of the Fourteenth Amendment require that states provide indigent defendants with a trial transcript free of charge when it is necessary for meaningful appellate review. However, the state is not "obligated to automatically supply a complete verbatim transcript," *Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir. 1980), and a State need not waste its funds providing for free those parts of the transcript that are not "germane to consideration of the appeal." *Draper v. Washington*, 372 U.S. 487, 495, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963). "[N]or is the state required to furnish complete transcripts so that the defendants . . . may conduct 'fishing

-7-

expeditions' to seek out possible errors at trial." *Jackson v. Estelle*, 672 F.2d 505, 506 (5th Cir. 1982).

At no time has Kunkle alleged any error that may have been uncovered through the production of those portions of voir dire not included in the record. Rather, Kunkle argues generally that he may have been able to uncover an error of constitutional magnitude had he been provided a complete transcript. In *Jackson,* this Court specifically rejected the idea that a state must provide a complete transcript for purposes of a mere 'fishing expedition.' *Id*. Furthermore, Kunkle's trial counsel also represented him on direct appeal. As the district court noted, it is unlikely that counsel, having participated in the jury selection, would uncover an error of constitutional magnitude only after the preparation of a complete verbatim transcript. For the above reasons, Kunkle has failed to make a substantial showing of a denial of a constitutional right. Kunkle's request for a COA on this issue is denied.

### IV.

Kunkle next argues that the introduction of unadjudicated offenses at trial violated his right to due process. During the sentencing phase of Kunkle's trial, the State introduced evidence demonstrating his involvement in unadjudicated offenses and evidence of prior bad acts. Kunkle argues that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and

*Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) require the State to prove beyond a reasonable doubt any "unadjudicated offenses" used by it as support for the special issues in a capital case. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. 530 U.S. at 490, 120 S.Ct. 2348. In *Ring*, the Supreme Court extended Apprendi to death penalty cases, holding that where a state capital murder statute requires, beyond a determination of guilt or innocence, the finding of certain aggravating factors before imposition of the death penalty, then these factors must be found by a jury beyond a reasonable doubt. 536 U.S. at 609, 122 S.Ct 2428.

On this issue, we agree with the district court's order rejecting this claim which petitioner had presented on a Rule 59(e) motion for reconsideration.[1] Kunkle's request for a COA on this

_____

[1] In its order the district court stated: "Kunkle argues that the Supreme Court's action in <u>Apprendi v. New Jersey</u> [] and its progeny require Texas to prove any unadjudicated offenses used in the punishment phase of trial beyond a reasonable doubt. However, this Court need not reopen the case based on this argument because the Fifth Circuit has recently held that <u>Apprendi</u> created a new rule that is unavailable on habeas review. See <u>United States v. Brown</u>, [305 F.3d 304, 310 (5th Cir. 2002)] (finding that "<u>Apprendi</u> creates a new rule of criminal procedure which is not retroactively applicable . . ."). As Kunkle's direct review concluded well before the Supreme Court decided <u>Apprendi</u>, any extension of that case to Texas' capital murder scheme is barred by the non-retroactivity principle of <u>Teague v.

issue is denied.

V.

Kunkle next argues that he was denied effective assistance of counsel because trial counsel failed to prepare and present mitigating evidence in the punishment phase of the trial. Specifically, Kunkle argues that trial counsel should have presented the testimony of Kunkle's mother which would have revealed his mother's mental illness, his father's mental illness, and the physical abuse of their son. Kunkle also complains that counsel failed to discover an expert report claiming that Kunkle suffered from psychological problems, along with school records showing that Kunkle suffered from a non-aggressive conduct disorder. The district court dismissed this claim for failure to exhaust state remedies. After a threshold inquiry into this claim, we find that Kunkle has demonstrated "that the issues presented [are] adequate to deserve encouragement to proceed further." *Slack*, 529 U.S. at 484, 120 S.Ct. 1595 (internal quotations omitted). Therefore, we grant Kunkle's request for a COA on this issue.

a.

Kunkle argues that the district court erred in dismissing his

---

Lane, 489 U.S. 288, 109 S.Ct. 1060 (1989). As Kunkle's reliance on Apprendi is unavailing on habeas review, this Court need not reopen this case." *Kunkle v. Cockrell*, No. 01-302 (S.D. Tex. Oct. 7, 2002) (order denying Motion to Alter or Amend Judgment).

-10-

ineffective assistance of counsel claim for failure to exhaust available state remedies. Kunkle's first habeas petition in state court presented no support for the ineffective assistance claim except a conclusory affidavit from trial counsel contending that there was abundant mitigating evidence of Kunkle's background, including a troubled home life and a family history of mental illness.[2] Kunkle's first federal habeas petition, however, presented evidentiary support for this claim, including an

---

[2] The affidavit asserts that had Kunkle's trial occurred after *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), Kunkle's trial counsel would have "introduced evidence about Troy's father's and mother's histories of mental problems and the effects it had on Troy. I would have also introduced evidence of early childhood abuse and behavioral problems and various attempst to acquire help." *Ex Parte Kunkle*, 852 S.W.2d 499, 505 (Tex.Crim.App. 1993). Proof as to the existence of this evidence is not provided in the affidavit.

affidavit from his mother[3] and a detailed psychological report.[4] The federal district court dismissed the first federal habeas petition as a "mixed petition" for failing to exhaust some of the claims in state court.  In its order dismissing the petition, the federal district court listed each of the claims Kunkle had failed to exhaust.  Kunkle's ineffective assistance claim, however, was not listed among the unexhausted claims.  Kunkle then filed his second habeas petition in state court, asserting those claims listed as unexhausted by the federal district court.  The state court denied these claims.  Kunkle then re-filed his original federal habeas petition.  The federal district court noted that

---

[3] Mrs. Kunkle's affadavit states that Mr. Kunkle was in the military and disciplined his sons in a military fashion.  This punishment usually consisted of a long lecture and a week of grounding.  Mrs. Kunkle states that Mr. Kunkle was hospitalized for a psychotic break in 1977, which ultimately led to his dismissal from the military.  Mrs. Kunkle states that after this psychotic episode Mr. Kunkle's treatment of Kunkle grew violent; however, Mrs. Kunkle details only a few concrete incidents in her affidavit.  The following specific incidences are related by Mrs. Kunkle:  (1) one time Mr. Kunkle threw Kunkle down so hard it bruised his spleen; (2) one time Kunkle came home late and Mr. Kunkle beat him; (3) one time Mrs. Kunkle came home and saw a hole in the wall which she was told was caused by Mr. Kunkle's throwing Kunkle into the wall.  Mrs. Kunkle also asserts that shortly after Kunkle was born she was committed to a psychiatric hospital.  Mrs. Kunkle asserts that she did not know why she was committed, but several years later Mr. Kunkle told her it was because she had tried to choke Kunkle.

[4] In 1994, Kunkle was interviewed by Dr. Murphy.  He concluded Kunkle had a thought disorder with features similar to schizophrenia.  Personality testing confirmed both schizophrenic process and lack of coping skills, perceptual problems, and other deficits normally associated with schizophrenia.

Kunkle did not include his ineffective assistance claim in his second state habeas petition, and therefore the state court still had not been presented with the additional facts asserted in Kunkle's mother's affidavit and the psychological report that had been attached to the first federal habeas petition. The district court concluded that Kunkle had not exhausted this ineffective assistance claim because Kunkle possessed this additional information at the time he filed his second state petition, yet failed to present these significant additional facts to the Texas Court of Criminal Appeals.

28 U.S.C. § 2254(b)(1) requires that federal habeas petitioners fully exhaust remedies available in state court before proceeding in federal court. To satisfy the exhaustion requirement of Section 2254(b)(1), "a habeas petitioner must have fairly presented the substance of his claim to the state courts." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). A habeas petitioner fails to exhaust state remedies "when he presents material additional evidentiary support to the federal court that was not presented to the state court." *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996).

In *Brown v. Estelle*, 701 F.2d 494 (5th Cir. 1983), this court considered a situation very similar to the instant case. The petitioner in *Brown* based both his state and federal habeas petitions on claims of ineffective assistance of counsel,

contending that trial counsel should have been on notice of facts sufficient to support an insanity defense. In state court, the petitioner detailed facts in his petition showing that he had exhibited "extremely bizarre and violent behavior" while in jail awaiting trial, that as a result he was committed to a mental hospital where he had been diagnosed as schizophrenic, and that upon returning to jail he received substantial doses of anti-psychotic drugs. *Id.* In a subsequently filed Section 2254 petition, the petitioner asserted the same general theory for his ineffective assistance claim, but added three affidavits of individuals who had observed petitioner's behavior. Because the claim of ineffective assistance was "significantly different and stronger" than that presented to the state court, this court held that his claim was not exhausted and that his claim required further proceedings in state court. *Id.* at 496.

The addition of the psychological report and Kunkle's mother's affidavit detailing her mental illness and the mental illness of Kunkle's father, along with concrete instances of abuse of Kunkle, presents "significant evidentiary support" not previously presented to the state court supporting his ineffective assistance claim. *See Graham*, 94 F.3d at 969. The claim would have been substantially different in state court if Kunkle had provided this evidentiary support rather than the conclusory affidavit of trial counsel. We conclude that Kunkle did not exhaust his ineffective

-14-

assistance of counsel claim in the state court.

b.

Kunkle argues further that the interests of justice require that this court treat his ineffective assistance claims as exhausted even if we determine that they have not been properly exhausted. Kunkle argues that at the time he filed his second state petition, Texas law did not prohibit the filing of successive state habeas petitions. Under current Texas law, however, Kunkle is foreclosed from filing another habeas petition, and as a result the claim is procedurally defaulted.[5] Tex. C.C.P. art 11.071 § 5. Kunkle relies on *Ford v. Georgia*, 498 U.S. 411, 423-24, 111 S.Ct. 850,112 L.Ed.2d 935 (1991), as support for his argument that a federal court may not apply a state procedural bar retroactively when the bar did not exist at a time when the default could have been avoided. In *Ford*, the Supreme Court held that a state procedural bar "must have been 'firmly established and regularly followed' by the time as of which it is to be applied" in order for it to be valid in a given case. *Id*. at 424-25, 111 S.Ct. 850.

The abuse of writ doctrine has been consistently applied as a procedural bar in Texas since 1994, long before its codification in Tex.CodeCrim.Proc.art. 11.071 § 5, and well before Kunkle filed his

---

[5] Kunkle did not argue in the district court or in this court cause for or prejudice that would excuse his procedural default.

-15-

second state habeas petition in 1995. See <u>Ex parte Barber</u>, 879 S.W.2d 889, 891 n. 1 (Tex.Crim.App.1994); <u>Fearance v. Scott</u>, 56 F.3d 633, 642 (5th Cir. 1995). Therefore, we must reject this argument.

c.

Kunkle also argues that the district court erred in not finding that the State waived the requirement of exhaustion. This issue is controlled by pre-AEDPA law. *Slack*, 529 U.S. at 480, 120 S.Ct. 1602.

Kunkle argues that the State can waive exhaustion either by explicitly waiving it, or by merely failing to assert the defense in its answer to the habeas petition. *Esslinger v. Davis,* 44 F.3d 1515, 1525 (11th Cir. 1995). Kunkle argues that the State waived its exhaustion defense to the ineffective assistance claim by failing to raise it in response to his first federal habeas petition. Furthermore, Kunkle argues that the State explicitly acknowledged in its answer to the first federal habeas petition that the claim of ineffective assistance of counsel was exhausted and argued the claim on the merits. Kunkle contends that this action by the State amounts to a waiver of the defense of exhaustion.

The State concedes that under this circuit's pre-AEDPA jurisprudence it is possible for the State to waive its exhaustion defense, but contends that it has not done so here. The State

-16-

argues that prior to the AEDPA it was the law of this circuit that for the State to have waived its exhaustion defense it "must have explicitly articulated the waiver or else have failed to raise [it] at the proper time." *Brown*, 701 F.2d at 496. The State argues that its failure to raise the defense in the first federal habeas proceeding was not a "fail[ure] to raise the . . . defense at the proper time." *Id*. The State argues that it is clear under the pre-AEDPA law of this circuit that the exhaustion defense is timely asserted if it is raised before the case reaches the court of appeals. *See, e.g., Hopkins v. Jarvis*, 648 F2d 981, 983 n. 2 (5th Cir. 1981); *Messelt v. Alabama*, 595 F.2d 247, 250-51 (5th Cir. 1979). The State contends that because it raised the defense in the district court, albeit at the second proceeding, it did not waive exhaustion for failing to raise the defense at the proper time.

In *McGee v. Estelle*, 722 F.2d 1206 (5th Cir. 1984) (en banc), this court addressed explicit and implicit waiver of the defense of exhaustion by the State. This court found that the State did not make an express waiver of its exhaustion defense by stating in its answer to the federal habeas petition that it "believed" the petitioner had exhausted state remedies. *Id*. at 1213. However, this court concluded that this statement *did* amount to an *implicit* waiver of the defense. *Id*. This court nevertheless stated: "[a] finding of waiver does not conclude our consideration, for a

district court or a panel of this court may consider that it should not accept a waiver, express or implied." Id. at 1214. This view was subsequently adopted by the Supreme Court. *See Granberry v. Greer*, 481 U.S. 129, 107 S.Ct 1671, 95 L.Ed.2d 119 (1987). By acknowledging in its answer to the first federal habeas petition that Kunkle's ineffective assistance claim was exhausted and then arguing that the claim should be rejected on the merits, it is likely that the State implicitly waived its exhaustion defense to this claim. However, *McGee* specifically recognizes the right of the district court, in its discretion, to decline to accept such a waiver. Accordingly, we must examine the district court's refusal to accept this waiver for an abuse of discretion.

The district court found that the State did not waive its exhaustion defense because "Kunkle's responsibility to exhaust his claims, especially when given the opportunity by the Court, does not rest in [the State's] immediate failure to recognize their unexhausted nature. Kunkle bears the burden of giving the state courts a chance to resolve his claims." *Kunkle v. Cockrell*, No. C-01-302, slip. op. at 35 (S.D.Tex. Sep. 3, 2002). Generally, the fact that petitioner will be procedurally barred from filing a successive writ and obtaining state court review of unexhausted material weighs in favor of a finding of waiver by the State. *See McGee v. Estelle*, 722 F.2d 1214. However, we believe the unique facts in this case support the district court's decision not to

-18-

accept the State's waiver. Kunkle's counsel obviously knew that the facts he had provided to the federal court in support of his first federal habeas petition had not been offered in the state court. In addition, as we stated previously, the Texas abuse of writ doctrine was firmly established at the time Kunkle filed his second state habeas petition.

As the district court observed, the petitioner has the primary responsibility to exhaust his claims. The petitioner has not explained why he did not present to the state court the same materials he had prepared and submitted to the federal court. Perhaps he thought the State would not raise exhaustion upon his return to federal court because it did not do so in the initial federal proceeding. But given the difficulty a petitioner has in establishing implicit waiver by the State and Texas' established law on successive writs, this belief was unjustified. The district court did not abuse its discretion in refusing to accept the State's implicit waiver of its exhaustion defense. Kunkle's request for a COA on this issue is denied.

d.

Although Kunkle's ineffective assistance claim is unexhausted, and therefore procedurally barred, we are satisfied that this claim should also be denied on the merits. Ineffective assistance of counsel claims are evaluated under the standard announced by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88,

-19-

104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To succeed on an ineffective assistance claim, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the defense. *Id*. at 687, 104 S.Ct. 2052. Because an ineffective assistance of counsel claim is a mixed question of law and fact, we review the district court's decision de novo. *Carter v. Johnson,* 110 F.3d 1098, 1110 (5th Cir.1997).

1.

To establish deficient performance, Kunkle must show that trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. However, "judicial scrutiny of counsel's performance must be highly deferential," and we must strive to eliminate the potential "distorting effect of hindsight." *Id.* at 689, 104 S.Ct. 2052. Accordingly, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.,* 104 S.Ct. 2052.

Kunkle contends that his trial counsel's performance was deficient because counsel failed to present significant mitigating evidence of Kunkle's mental problems and troubled home life. In support of this claim, Kunkle presents the affidavit of trial counsel, Richard Rogers. In his affidavit, Rogers states that he was aware of this potentially mitigating evidence, but did not

-20-

present it because the pre-*Penry* sentencing regime in Texas did not provide the jury with a vehicle to consider mitigating evidence. *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Rogers states that without a proper vehicle for the jury to consider the mitigating nature of this evidence, he concluded that the evidence would be more prejudicial than beneficial to Kunkle. Rogers states that if he had known the court would give a mitigating instruction to the jury, he would have introduced evidence of Kunkle's parents' history of mental illness and its effect on Kunkle.

Because we agree with the district court that Kunkle failed to establish the prejudice prong of the *Strickland* test, we pretermit a decision on the merits of the deficient performance prong of *Strickland*, and assume without deciding that Kunkle has shown deficient performance.

2.

To prove prejudice, Kunkle must demonstrate a "reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309 (5th Cir. 1999). However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). Rather, Kunkle must show that counsel's errors "rendered the result of the proceeding fundamentally unfair or

-21-

unreliable." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997). In determining whether a petitioner suffered prejudice, we compare the evidence actually presented at sentencing with any additional mitigating evidence presented in the habeas proceeding. *Neal v. Puckett*, 286 F.3d 230, 241 (5th Cir. 2002). After considering all the evidence, the court must decide whether the "additional mitigating evidence was so compelling that there was a reasonable probability that at least one juror could have determined that because of the defendant's reduced moral culpability, death was not an appropriate sentence." *Id*.

At the time of Kunkle's trial, in order for a Texas jury to impose a death sentence it was required to find that the murder was committed "deliberately" and that the defendant would constitute a "continuing threat to society." The strongest evidence produced by the State in support of the special findings was the cruelty associated with the murder and the senselessness of the crime.

During the punishment phase of Kunkle's trial, the State called four witnesses: Walter Howard, Frances Evans, David Abbott, and Edward Garza. Howard was the assistant principal of the high school Kunkle attended. Howard testified that Kunkle committed numerous infractions while in school, including truancy, smoking and classroom disturbances, and that Kunkle would become hostile and belligerent when confronted with his violations. Howard testified that Kunkle was transferred to Center School, a school

for children with emotional problems, and that he believed Kunkle was a threat to society.

Frances Evans was the principal of Center School. She testified that Kunkle had difficulty following rules and that Kunkle would likely have trouble adhering to the regulations placed on people on a regular basis.

David Abbott was a psychologist who worked with Kunkle while at the Center School. He testified that Kunkle had a lackadaisical attitude and was surly. Abbott also testified that Kunkle had a flagrant disregard for the rights and needs of others and did not seem to have an internalized value system consistent with societal norms. Abbott stated that Kunkle tended to blame others when problems would arise. Abbott believed that Kunkle would be a risk for future acts of violence.

Counsel for Kunkle called Kunkle's father as a witness. He testified that although he and Kunkle had problems, he would help support Kunkle if he were sentenced to life imprisonment. Kunkle's father also told the jury that Kunkle had never been arrested before this incident. Counsel then called Kunkle's mother who likewise testified that she loved her son and that she would help him if he were sentenced to life.

In support of his first and second federal habeas petitions, Kunkle submitted the affidavit of Kunkle's mother, Judith Kunkle (Mrs. Kunkle), the Psychological evaluation of Dr. Philip Murphy,

School Assessment Reports, and the Texas Department of Corrections Psychiatric Notes for Kunkle. Mrs. Kunkle's affidavit describes Kunkle's relationship with his father, Jerry Kunkle (Mr. Kunkle). Mrs. Kunkle's affadavit states that Mr. Kunkle was in the military and disciplined his sons in a military fashion. This punishment usually consisted of a long lecture and a week of grounding. Mrs. Kunkle states that Mr. Kunkle was hospitalized for a psychotic break in 1977, which ultimately led to his dismissal from the military. Mrs. Kunkle states that after this psychotic episode Mr. Kunkle's treatment of his son (who was 11 years old at the time) grew violent; however, Mrs. Kunkle details only a few concrete incidents in her affidavit. The following specific incidences are related by Mrs. Kunkle: (1) one time Mr. Kunkle threw Kunkle down so hard it bruised his spleen; (2) one time Kunkle came home late and Mr. Kunkle beat him; (3) one time Mrs. Kunkle came home and saw a hole in the wall which she was told was caused by Mr. Kunkle's throwing Kunkle into the wall. Mrs. Kunkle also asserts that shortly after Kunkle was born she was committed to a psychiatric hospital. Mrs. Kunkle asserts that she did not know why she was committed, but several years later Mr. Kunkle told her it was because she had tried to choke Kunkle.

We doubt that the facts recited in Mrs. Kunkle's affidavit would have convinced a juror to vote against imposition of the death penalty. Other than the few instances above, Mrs. Kunkle's

affidavit contains nothing but generalizations as to the condition of Kunkle's home life or the mental state of his parents. Furthermore, because several of the incidents listed in Mrs. Kunkle's affidavit were not witnessed by her, but were related to her by Mr. Kunkle, the jury would probably give limited weight to these statements.

A psychological report of Kunkle was performed by Dr. Murphy, a licenced clinical psychologist. The report offers extensive detail regarding Kunkle's psychological problems and also challenges some of the conclusions made by the State's witnesses during the sentencing phase of Kunkle's trial. In addition to a personal examination, Dr. Murphy examined the two evaluations prepared by the psychological staff at Kunkle's high school which were relied upon by the State's witnesses in forming their opinions on whether Kunkle "deliberately" killed the victim and on Kunkle's future dangerousness. One evaluation, performed when Kunkle was 15 years, six months of age, was educational in nature and found that Kunkle was learning disabled. The other, performed when Kunkle was 16 years, 9 months of age, was psychological in nature. With respect to the latter, the school found no indication that Kunkle was unaware of his actions.

After interviewing Kunkle, Dr. Murphy concluded Kunkle had a thought disorder with features similar to schizophrenia. Personality testing confirmed both schizophrenic process and lack

of coping skills, perceptual problems, and other deficits normally associated with schizophrenia.  Dr. Murphy concluded that Kunkle's schizophrenia would have prevented him from "deliberately" causing the death of the victim.

We find it significant that Dr. Murphy's psychological evaluation was performed in 1994, ten years after the murder.  We believe that fact, alone, would likely cause a jury to question the validity of the evaluation.  Kunkle's high school psychological evaluation, on the other hand, was performed a little over a year before the murder, when Kunkle was almost seventeen.  That evaluation found no indication of a schizophrenic disorder.  In the light of these facts, Dr. Murphy's assertion that Kunkle was schizophrenic at the time of the murder is highly speculative and unpersuasive.  Kunkle has not shown that the presentation of Dr. Murphy's testimony would have affected the jury's finding that Kunkle deliberately committed the murder.

With respect to the issue of future dangerousness, Dr. Murphy pointed out that the school's psychological evaluation led to a diagnosis of Socialized, Nonaggressive Conduct Disorder.  Dr. Murphy states that this diagnoses predicts passive-aggressive behavior, and would not in itself lead to a prediction of future dangerousness.  However, Dr. Murphy admits that in individuals with this condition, general passive-aggressive behavior often becomes active-aggressive (which could lead to a prediction of future

dangerousness) when the subject is around his peers. Indeed, this was exactly the situation when Kunkle shot the victim. Considering, from the perspective of the jury, that Kunkle has already demonstrated a propensity for severely active-aggressive behavior when surrounded by peers, we find Dr. Murphy's assessment is unlikely to have persuaded the jury to reach a different outcome on future dangerousness. For these reasons, we conclude that Kunkle has failed to show that he was prejudiced by any deficient performance of his trial counsel.

## VI.

For the reasons stated above, we grant Kunkle's request for a COA on the claim of ineffective assistance of counsel. After considering the merits of Kunkle's ineffective assistance claim, we conclude that the district court did not err in finding it was unexhausted and deny it as procedurally defaulted. We also conclude that Kunkle has not shown prejudice as required by the second prong of *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Accordingly, we affirm the district court's denial of relief on this claim. For the reasons stated above, we deny COA on Kunkle's remaining claims.

AFFIRMED; COA DENIED.