United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 11, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 03-40980
_____

LESTER LEROY BOWER,

Petitioner-Appellant,

versus

DOUG DRETKE, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas

(92-CV-182)

_____

Before SMITH, DeMOSS,  and STEWART, Circuit Judges.

PER CURIAM:[*]

Petitioner-Appellant Lester Leroy Bower, Jr. filed an Application for a Certificate of

Appealability (COA), wherein he seeks to appeal the district court's denial of his petition for writ

of habeas corpus.  Bower has been convicted and sentenced to death for the murder of four

individuals in connection with the theft of an ultralight aircraft.  Following a series of unsuccessful

state habeas appeals, Bower sought federal habeas relief asserting that his conviction was

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

constitutionally infirm. The district court denied his federal habeas petition, and he presently asks this court to issue a COA so that he may appeal the district court's ruling. For the reasons set forth below we hold that the district court's denial of Bower's federal writ of habeas corpus was appropriate and that a COA should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 1984, Bower was found guilty of capital murder and was sentenced to death. Some background is appropriate. On October 8, 1983, the bodies of Ronald Mays, Philip Good, Bobby Tate, and Jerry Mack Brown were discovered in an airplane hanger located on the property of Tate. Bower v. State of Texas, 769 S.W.2d 887, 889 (Tex. Crim. App. 1989). Each man had been shot multiple times. Id. at 890. Moreover, a valuable ultralight aircraft, which had also been located inside the hanger was missing. Id. During the course of a subsequent law enforcement investigation, eleven empty .22 caliber shell casings which had been manufactured by Julio Fiocci, had been discovered on the hangar's floor. Id. This discovery was of some significance to the investigators because the discovery of the spent shell casings suggested that the murderer had used an automatic weapon. Id. The investigators also believed, based on the evidence recovered at the crime scene, that a silencer was used. Id.

The FBI's initial attention focused on Bower and he agreed to meet with investigators. It was subsequently learned that in the days preceding the murders, Bower had several telephone conversations with one of the victims, Philip Good, because he (Bower) was interested in purchasing an ultralight aircraft which Good had advertised was for sale. Id. at 891. During conversations with FBI investigators, Bower also conceded to owning a passel of firearms. Id. The officers secured a search warrant for Bower's home. Id. at 892. The evidence recovered included several manuals

2

related to the construction of ultralight aircrafts, several instructional guides as to the proper use of silencers, books and articles on weaponry and how to commit murder, as well as receipts which indicated that he had purchased three boxes of Julio Fiocchi .22 caliber bullets. Id. Additionally, the search also recovered two ultralight tires and rims that had the name "Tate" scratched in them (apparently belonging to victim Bobby Tate), unidentified blood stains were found on Bower's boots, and fingerprints from victim Jerry Mack Brown were found on the ultralight tubing that was discovered in Bower's garage. Id. Also discovered in Bower's garage were decals and materials usually found on the exterior of an ultralight aircraft, id. as well as evidence which suggested that in the days preceding the murders, Bower went to a shooting range and practiced firing .22 caliber ammunition. Id. at 893.

Bower was eventually tried for the murders and was found guilty of killing all four victims in the course of stealing the ultralight aircraft.[1] He appealed his conviction, and the Texas Court of Criminal Appeals affirmed on January 25, 1989. See Bower v. State of Texas, 769 S.W.2d 887 (Tex.Crim.App. 1989), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3266 (1989). Bower then brought a Petition for Post-Conviction Writ of Habeas Corpus in the 15th Judicial District Court, Grayson County, Texas which was denied, as was his subsequent habeas appeal. See Ex Parte Bower, 823 S.W.2d 284, *cert. denied*, 506 U.S. 835 (1992).

Thereafter, Bower filed a petition for a writ of habeas corpus in the United States District

---

[1] As such, in order to impose a sentence of death under Texas law at the time, the jury was required to find beyond a reasonable doubt and answer in the affirmative regarding two Special Issues: (1) whether Bower's conduct which caused the death of Jerry Mack Brown, was committed deliberately and with reasonable expectation that the death of the deceased would result; and (2) whether there was a probability that Bower would continue to commit violent criminal acts, and as such would he constitute a continuing threat to society at-large.

Court for the Eastern District of Texas in 1992 pursuant to 28 U.S.C. § 2254 . The district court conducted a five day evidentiary hearing between June 12 and16, 2000, and two years later, issued a seventy-one page memorandum opinion denying Bower's petition for habeas relief on September 6, 2002.

This petition for a COA ensued, wherein Bower asserts that he should be entitled to appeal a number of issues stemming from the district court's denial of his habeas petition.[2]

## STANDARD OF REVIEW

Because Bower filed his federal habeas petition in 1992, prior to the April 24, 1996 enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA), this court must employ pre-AEDPA law in analyzing the propriety of district court's denial of his habeas petition. See, e.g., Soffar v. Dretke, 368 F.3d 441, 463 (5th Cir. 2004); Kunkle v. Dretke, 352 F.3d 980, 985 (5th Cir. 2003). Because Bower has also filed his appeal from the denial of his habeas petition *following* the enactment of AEDPA, "post-AEDPA law governs the right to appeal." Kunkle, 352 F.3d at 984. This simply means that Bower may only appeal the denial of his petition for federal habeas relief if this court determines that a COA should be issued, id., because without such authorization this court lacks jurisdiction to consider his claims. See 28 U.S.C. § 2253; see also Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

In order to obtain a COA appealing the district court's habeas ruling, Bower must make a

---

[2] Bower has already been granted a COA as to two issues. In an order dated February 2, 2004, a federal district court found that Bower was entitled to a COA because "questions of ineffective assistance of trial counsel at both the guilt determination and punishment determination phase of his trial deserve[d] encouragement to proceed further." Second, the district court found "that Bower's claim that the prosecution failed to produce material, exculpatory evidence, at least [with] regards [to] the cumulative effect of the several alleged items of evidence, also deserve[d] encouragement to proceed further."

4

"substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c), meaning simply that Bower must make a "showing that reasonable jurists could debate (or, for that matter, agree that) the petition should have been resolved in different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (citation and internal quotation marks omitted). Thus, it is largely unnecessary to engage in a highly involved analysis as to the substance of Bower's claims in weighing the propriety of granting the COA. See Miller-El, 537 U.S. at 336. Moreover, it is not the province of this court to deny a COA on the grounds that Bower has very little hope of succeeding as to the ultimate merits of his claims. Id.

It naturally follows that if a district court has rejected the merits of the applicant's constitutional claims, our COA determination hinges on whether "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Id. at 338 (citation and internal quotation marks omitted). Stated somewhat similarly, the worthiness of a petition for a COA -- and concomitantly whether the district court erred in its denial of the petition for a writ of habeas corpus -- must be analyzed pursuant to the admittedly deferential standard articulated by § 2254 (d)(1), which provides in relevant part that a federal district court may not grant habeas relief "unless the state court adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States.'" Tennard v. Dretke, 124 S.Ct. 2562, 2569 (2004) (quoting § 2254(d)(1)).

Finally, consistent with the pre-ADEPA standard of review, the district court's legal determinations will be reviewed *de novo*, and the state court's factual findings will be reviewed for clear error. See Kunkle, 352 F.3d at 985 (citing Soffar v. Cockrell, 300 F.3d 588, 592 (5th Cir.2002)

5

(en banc)). Because we are guided by pre-ADEPA standards, this court will summarily presume that all factual findings which find support in the record are correct, however pre-ADEPA standards do not mandate deference "to the state court's legal conclusions." Id. (citations omitted).

## DISCUSSION

### A.

Bower asserts that he should be permitted to engage in more substantive discovery. He avers there remains a significant factual dispute as to who is responsible for the four murders, and that reasonable jurists could disagree as to whether he should be permitted to engage in additional discovery. He notes that he had moved four times, between March of 1992 and July of 2002, asking the district court to permit him to engage in more substantive discovery related to his claims that a great deal of evidence exists that would exculpate him. For example, Bower avers that his state trial counsel, Jerry Buckner, refused to consult a ballistics expert, refused to follow leads which would have implicated an Oklahoma drug gang in the murders, and only relied upon the exculpatory evidence provided by the Government, without engaging in a more substantive investigation on his own. [3]

More pointedly, Bower believes that he should have been permitted to engage in greater discovery prior to the district court addressing his COA petition. He plainly recognizes that Rule 6(a) of the Rules Governing Section 2254 Cases vests district courts with discretion to permit additional discovery for "good cause shown." However, Bower argues that this standard was not intended to circumscribe a party's ability to garner information that would fully exculpate him.

---

[3] Most of these claims apparently dovetail with his ineffective assistance of counsel claim which the federal district court already granted a COA.

Similarly, he maintains that he should have been allowed to further pursue evidence that would have demonstrated that four other individuals were actually responsible for the murders. He desired the opportunity to compare physical evidence found at the murder scene, with the individuals Bower's contends were actually responsible for the murders, and argues that it was erroneous for the district court not to allow these comparisons to take place. Additionally, he maintains that there remains a factual dispute as to the motivation underlying the murders, which he avers has never been fully been addressed, and that if he were permitted the opportunity, he could draw a nexus between the four members of the Oklahoma drug gang and the murders of Mays, Good, Tate, and Brown.

The question of whether a COA should issue, based on a district court's discovery ruling made in the context of a habeas appeal, is vested within the discretion of the district court and therefore will only be reviewed by this court for an abuse of discretion . See Rule 6(a) of the Rules Governing § 2254 Cases ("A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if . . . the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."). We have noted that the dispositive question in this regard is "whether the district court abused its discretion [by] denying [the discovery motion, and whether the denial would be deemed] debatable among jurists of reason." Hill v. Johnson, 210 F.3d 481, 487 (5th Cir. 2000). Moreover, Rule 6(a) mandates that discovery requests in analogous circumstances are circumscribed by "good cause," which we have characterized as being present "'when a petition for habeas relief establishes a prima facie [case] for relief.'" Id. (quoting Murphy v. Johnson, 205 F.3d 809, 814 (5th Cir. 2000); see also Ward v. Whitley, 21 F.3d 1355, 1367 (5th Cir. 1994) ("A federal habeas court must allow discovery . . . *only* where a factual dispute, if resolved in [Bower's] favor, would entitle him to relief.") (emphasis added).

7

Thus, the question of the propriety of the district court's discovery ruling is firmly intertwined with the evidence that was actually presented against Bower. We find that there has been no showing made that Bower's contentions, if proven to be true, would necessarily demonstrate that he has established a prima facie case for relief or that he was actually innocent -- as would be required under the abuse of discretion standard. See, e.g., In re Bagwell, 401 F.3d 312, 316 (5th Cir. 2005). This is particularly so given the exceptionally strong circumstantial case -- which will be discussed in greater depth below-- that was brought against Bower. See Kutzner v. Cockrell, 303 F.3d 333, 337 (5th Cir. 2002); see also In re Bagwell, 401 F.3d at 316 (recognizing that the strength of the prosecution's case against the accused undercut his subsequent actual innocence claim). Consequently, Bower's request for a COA as to this claim of error is denied.

B.

Bower argues that he has made a sufficiently persuasive showing that he is actually innocent of the crimes for which he has been charged. Conceding that the showing necessary to establish actual innocence under these circumstances is daunting, he nevertheless believes that he has met this burden. For example, he contends that he has offered a spate of new witness affidavits, that would implicate others in the crimes. Moreover, he believes that if permitted to present new physical and ballistics evidence he would be totally exonerated of the charges brought against him.

This court has found that claims of "actual innocence are not cognizable on federal habeas review." Graves v. Cockrell, 351 F.3d 143, 151 (5th Cir. 2003). We have specifically recognized that an actual innocence claim predicated on newly discovered evidence has "'never been held to state a ground for federal relief absent an *independent* constitutional violation occurring in the underlying state criminal proceeding.'" Dowthitt v. Johnson, 230 F.3d 733, 742 (5th Cir. 2000)

8

(emphasis added) (quoting Herrera v. Collins, 506 U.S. 390, 400 (1993)). Thus, a habeas petitioner must first establish that there exists substantial doubt as to his guilt before subsequent questions may be raised about constitutional infirmities related to his underlying state conviction. Id.

We find, and the record amply supports, the evidence against Bower was simply overwhelming. For the purposes of disposing of this claim, we will briefly reiterate the evidence brought against Bower seriatim: (1) distinct ammunition --Julio Fiocchi .22 caliber ammunition -- similar to the type used in the execution-style murders was found in Bower's home; (2) Bower had several conversations with one of the murder victims days before the murders, inquiring about purchasing the ultralight aircraft; (3) on the day of the murders, the four victims were to meet with a potential buyer, in the hangar owned by Bobby Glen Tate; (4) a subsequent search of Bower's home recovered two ultralight tires and rims that had the name "Tate" scratched in them; (5) during the search of Bower's home, investigators also discovered unidentified blood stains on his boots and travel bag; (6) ultralight aircraft materials were discovered in Bower's garage area; (7) fingerprints of one of the murder victims were found on ultralight tubing found in his garage; (8) he possessed a receipt for a silencer; (9) numerous magazine articles were found within Bower's home related to the commission of murder; and (10) in the days preceding the murders, Bower went to a shooting range and practiced firing .22 caliber ammunition for approximately fifteen minutes.

In light of the overwhelming evidence, we hold that Bower has not raised substantial doubt as to his guilt. See Kutzner, 303 F.3d at 333.

C.

Bower contends that he should be granted a COA because the state trial court's special issue instructions prevented the jury from giving full consideration to his mitigating evidence particularly

9

related to the fact that he was a good and decent family man , who up until his arrest, had never been in trouble with the law.  To recall, at the time of Bower's sentencing hearing, Texas juries in capital cases were simply asked: (1) whether the defendant had acted "deliberately and with the reasonable expectation that the death of the deceased would result;" and (2) whether "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."   If the jury found in the affirmative beyond a reasonable doubt as to both special issues, a sentence of death would be imposed.

The central premise underlying his claim is that the second special issue did not permit the jury to give effect to mitigating evidence as to Bower's good character.  This argument has been rejected by this court on several occasions.  See, e.g., Coble v. Dretke, -- F.3d -- , 2005 WL 1663882 (5th Cir. July 18, 2005); Boyd v. Johnson, 167 F.3d 907 (5th Cir. 1999); Barnard v. Collins, 958 F.2d 634 (5th Cir. 1992).  We have noted that because "the principal mitigating thrust of good character evidence is to show that the defendant acted atypically in committing the capital crime, *this evidence can find adequate expression under the second special issue*."  Barnard, 958 F.2d at 640 (emphasis added); see also Coble, -- F.3d -- , 2005 WL 1663882, at * 14.

Because this court has plainly recognized that good character evidence could have properly been given effect through the second special issue, we hold that this claim is without merit.

D.

Bower argues -- irrespective of his challenge to Texas' sentencing scheme -- that the prosecution failed to meet its burden related to whether Bower posed a threat of future dangerousness as referenced in the second special issue presented to the jury. He asserts that because the prosecution did not present any evidence during his sentencing hearing, and because he presented

numerous witnesses who detailed that he was a kind and loving father, reasonable jurists could debate as to whether sufficient evidence was presented to the jury to support the future dangerousness special issue. Bower contends that because the prosecution failed to present any evidence that would support a finding of future dangerousness, and because there had been no showing made that he suffered from a mental infirmity, or had a criminal record of any sort, *ipso facto*, he is entitled to a COA on this ground.

The district court found Bower's reasoning to be specious as to this COA ground. The court observed that it would simply be illogical to require the jury to listen to, for a second time during the sentencing phase of the trial, the entirety of the evidence that was presented during the guilt/innocence phase. Given the overwhelming circumstantial evidence presented, which drew a strong nexus between Bower and the murders, and the brutality with which the murders were carried out, the district court found that the jury had been presented with sufficient evidence to make a determination as to Bower's threat of future dangerousness.

This court has considered whether sufficient evidence was presented to support the jury's findings as to the special issues before it. See, e.g., Martinez v. Johnson, 191 F.3d 229, 245 (5th Cir. 2001); Hughes v. Johnson, 191 F.3d 607, 619 (5th Cir. 1999); Green v. Johnson, 160 F.3d 1029, 1047 (5th Cir. 1998). Our standard of review under these circumstances is guided by the sufficiency of evidence standard articulated by the Supreme Court in Jackson v. Virginia, 443 U.S. 307 (1979). See Martinez, 191 F.3d at 245 (recognizing the applicability of Jackson when a defendant seeks to challenge the sufficiency of evidence presented in support of a jury finding related to the special issues questions). Consequently we simply consider "'whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements

11

of the crime beyond a reasonable doubt.'" Hughes, 191 F.3d at 619 (emphasis added) (quoting Jackson, 443 U.S. at 319).

As referenced above, the case that was presented against Bower was quite encompassing, as significant amounts of circumstantial evidence tied Bower to this heinous crime. Given the foregoing, we hold that a rational fact-finder could clearly find the requisite elements of the crime of capital murder beyond a reasonable doubt. Id. Moreover, this fact would likely not be debatable among jurists of reason, and because of this, Bower's petition for a COA as to this claim is simply unavailing.

E.

Finally Bower opines that the prosecutor implicitly made reference on two occasions during the course of his closing argument to the fact that Bower never testified on his own behalf during his trial. First, the prosecutor stated to the jury, in reference to Bower, "Not one single bit of remorse for what he did. Look at him. Do you see him right now? Do you feel bad for what he did? Does he feel bad?" Upon objection from Bower's counsel, the trial court instructed the jury to disregard this remark. Subsequently however, the prosecutor stated, "You can see him in the courtroom. You can look at him. He talked to the FBI. He talked to those FBI Agents on three occasions. At one time did he ever say, 'Gosh, I don't know what got into me. I did it and I feel horrible. I'm sorry?' Never." Bower's counsel moved to strike this second statement, but the trial court overruled the objection. Bower now believes that the prosecutor's statement was prejudicial, and had an appreciable effect on the trial outcome, because, from his perspective, both statements implicitly suggested that Bower was culpable because he had not testified on his own behalf during the trial, and did not show contrition on the witness stand.

12

We have noted that it is improper for a prosecutor to argue during the punishment phase that the accused's failure to testify during the guilt/innocence phase reflected his bad character. See Ward, 21 F.3d at 1365. However, the fact that a comment was in fact made will not summarily amount to reversible error, as a matter may only be reversed based on a prosecutor's improper statement regarding the accused failure to testify in the context of "collateral review[,] . . . [when] it had substantial and injurious effect or influence on the outcome." Id. Moreover, in order for this court to make a finding that a statement made by the prosecutor was, in actual ity, a comment on the accused's failure to testify, this "court must conclude that the prosecutor's manifest intention was to comment on that failure or that the comment was such that the jury would naturally and necessarily take it to be such a comment." United States v. Bermea, 30 F.3d 1539, 1564 (5th Cir. 1994).

The record does not clearly manifest that the prosecutor was commenting on Bower's failure to testify. Additionally, "[g]iven the overwhelming evidence of guilt and the cautionary instruction to the jury [regarding the first statement]," Cotton v. Cockrell, 343 F.3d 746, 752 (5th Cir.2003), the prosecutor's allegedly grievous statements did not have a "substantial and injurious effect or influence in the determination of [Bower's] guilt." Id. More pointedly, reasonable jurists could not find this point debatable.

## CONCLUSION

For the foregoing reasons, the district court's determination is affirmed. Bower's application for a COA is denied, except for the grounds that have already been granted pursuant to the district court's February 2, 2004 order.[4]

---

[4] Upon issuance of this opinion, the Clerk of Court will issue a notice directing the parties as to briefing of Bower's COA claims which were granted by the district court.

13

AFFIRMED.