UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-40340
_____


WALTER BELL, JR.,

                                    Petitioner-Appellant,

                    versus

JANIE COCKRELL, DIRECTOR, Texas
Department of Criminal Justice -
Institutional Division,

                                    Respondent-Appellee.


_____

Appeal from the United States District Court
for the Eastern District of Texas
_____


October 17, 2002

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES


Before JONES, BARKSDALE, and BENAVIDES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

        Pending before this court on remand from the U.S. Supreme
Court is the question what to do with a capital habeas case in
which the petitioner has consistently offered clinical evidence of
mental retardation since his first trial, which took place in the
1970's.  We conclude that this habeas petition must be dismissed
without prejudice so that the State of Texas can reconsider Bell's

case in light of <u>Atkins v. Virginia</u>, ___ U.S. ___, 122 S.Ct. 2242 (2002).

A brief explanation of this disposition is appropriate. Bell killed his former employer Ferd Chisum and Chisum's wife Irene in 1974. He was indicted and convicted of the capital murder of Ferd Chisum, a conviction affirmed on direct appeal. <u>Bell v. State</u>, 724 S.W.2d 780 (Tex. Crim App. 1986), cert. denied, 479 U.S. 1046 (1987). On state habeas corpus review, however, the Texas Court of Criminal Appeals reversed Bell's conviction and death sentence pursuant to <u>Penry v. Lynaugh</u>, 492 U.S. 302, 109 S.Ct. 2934 (1989). Ex parte Bell, No. 70,946 (Tex. Crim. App., Nov. 6, 1991). Bell was tried a second time for the capital murder of Ferd Chisum and was again convicted and sentenced to death in 1994. After exhausting direct appeal remedies, <u>see</u> <u>Bell v. State</u>, 938 S.W.2d 35 (Tex. Crim. App. 1996), he filed an unsuccessful application for state habeas corpus relief. Ex parte Bell, No. 10898-05.

In the federal habeas petition attacking this second conviction, Bell averred that it was unconstitutional for him, as a mentally retarded individual, to be executed. During both trials for the murder of Ferd Chisum, Bell offered clinical evidence of mild mental retardation. Both the federal district court and this court rejected Bell's claim as foreclosed by then-existing Supreme Court precedent. He had the good fortune to file a certiorari petition in the same Term in which the Supreme Court ruled, based

2

on the evolving standards of decency, that execution of the mentally retarded has indeed become unconstitutional. Atkins, 122 S.Ct. at 2252.

The Supreme Court remanded Bell's case to this court for reconsideration in light of Atkins. We sought briefing from the parties on the proper mode of proceeding. Both parties acknowledge that Atkins constitutes an exception to the non-retroactivity rule of Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060 (1989), and therefore applies retroactively to his habeas case. We agree. See Penry v. Lynaugh, 492 U.S. at 330, 109 S.Ct. at 2953 ("[I]f we held, as a substantive matter, that the Eighth Amendment prohibits the execution of mentally retarded persons . . . such a rule would fall under the first exception to [Teague's] general rule of non-retroactivity and would be applicable to defendants on collateral review.").

From this point, the parties' positions diverge. Bell urges this court to reverse the judgment of the federal district court denying habeas corpus relief, vacate the judgment of the Texas trial court and remand for a jury determination of his mental retardation. Even more aggressively, he asserts that this court could resolve the issue of mental retardation based upon the existing state court record in which, he states, the prosecution never contested the evidence of his mental retardation. The state, on the other hand, suggests that we should affirm the federal district court's denial of habeas relief, inasmuch as the state

3

courts' prior decisions were not based on an "unreasonable" application of then-existing federal law.  28 U.S.C. § 2254(d).  The state suggests that Bell could then file a successive state habeas petition raising the Atkins issue.  Alternatively, the state would have us remand Bell's Eighth Amendment claim to the federal district court with orders to dismiss it without prejudice.

What this divergence of views exhibits is the welter of uncertainty following Atkins, which declared that execution of mentally retarded persons is now an unconstitutional cruel and unusual punishment.  The Supreme Court neither conclusively defined mental retardation nor provided guidance on how its ruling should be applied to prisoners already convicted of capital murder.  Instead, the Court held,

> Not all people who claim to be mentally retarded will be so impaired as to fall within the range of mentally retarded offenders about whom there is a national consensus.  As was our approach in Ford v. Wainwright, with regard to insanity, "we leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon its execution of sentences."  477 U.S. 399, 405, 416-17, 106 S.Ct. 2595, 91 L.Ed.2d 385 (1986).

Atkins, 122 S.Ct. at 2250.  In these circumstances, inferior federal courts have no useful role to play until and unless following Atkins, a death sentence is reaffirmed or again imposed on Bell by the state courts.  Just how the state courts will implement Atkins, we cannot say.  Clearly, however, the state must be given the first opportunity to apply the Supreme Court's holding

4

in order to insure consistency among state institutions and procedures and to adjust its prosecutorial strategy to the hitherto unforeseen new rule.

For these reasons, we VACATE the district court's judgment denying habeas relief only on Bell's Eighth Amendment Atkins claim, and we REMAND with instructions to dismiss that claim without prejudice.

VACATED in PART and REMANDED with INSTRUCTIONS.

# UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

_____


No. 01-40340

Civil Docket #5:99-CV-00209


_____



WALTER BELL, JR.,


Petitioner-Appellant,



versus



JANIE COCKRELL, Director,

Texas Department of Criminal Justice - Institutional Division,


Respondent-Appellee.


_____

Appeal from the United States District Court

for the Eastern District of Texas

_____

December 13, 2001

Before JONES, BARKSDALE, and BENAVIDES, Circuit Judges.

By EDITH H. JONES:[*]

Petitioner Walter Bell was denied habeas corpus relief by the federal district court on his conviction for the capital murder of Ferd Chisum, his former employer, in Port Arthur, Texas, in 1974. Bell presents two contentions in this court. First, he argues that evidence of mild mental retardation presented at his trial disqualifies him from the death penalty by virtue of an alleged evolving national consensus against executing the mentally retarded. The district court granted a certificate of appealability (COA) on this contention. Bell applies for a COA, however, after being turned down on his second contention, that newly discovered evidence demonstrates his confession was coerced by police brutality. Finding no merit in either contention under

_____

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

7

the standards of review adopted by AEDPA [1], we affirm the judgment on the first contention and deny COA on the second.[2]

**1.   Whether the Constitution prohibits execution of the mentally retarded.**

Under AEDPA, we review the state court decision denying relief on this claim to determine (1) whether it was contrary to or involved an unreasonable application of clearly established Federal law as expressed by the Supreme Court, 28 U.S.C. § 2254(d)(1), or (2) whether the facts found by the state courts were unreasonable in light of the record.   28 U.S.C. § 2254(d)(2).   Relief is not barred on this claim by the Teague non-retroactivity doctrine.  See Penry v. Lynaugh, 492 U.S. 302, 331, 109 S.Ct. 2934,  2953 (1989).

Bell's initial conviction was reversed, and he received a second trial for capital murder of Ferd Chisum so that the state courts could apply the then-new Supreme Court decision in Penry v. Lynaugh.  Penry held that a jury must be permitted to find that a defendant's mental retardation mitigates against infliction of the death penalty because his condition limits his culpability.  492

---

[1]    The Antiterrorism and Effective Death Penalty Act of 1996.

[2]    Both the district court and the magistrate judge analyzed Bell's claims *de novo*, without reference to the substantive limitations imposed by AEDPA.  While we need not question our brethren's analysis, it is important to recognize that AEDPA's standards reflect the deference that Congress has ruled we must pay to state court convictions.

U.S. at 320-28, 109 S.Ct. at 2947-52.  Penry refused to hold that the Eighth Amendment requires a categorical exclusion of mentally retarded defendants from receiving the death penalty.  492 U.S. at 331-35, 109 S.Ct. at 2953-55.  The Texas Court of Criminal Appeals so applied Penry to Bell's second appeal.  Bell v. State, 938 S.W.2d 35, 55 (1996).

Penry has not been subsequently overturned by the U.S. Supreme Court.  Until it is, the standard for granting habeas relief under AEDPA, which requires state court decisions to conform to Federal law articulated by the Supreme Court, will not be satisfied.  Bell's argument, formulated on a still evolving national consensus made up of over a dozen states that have legislatively decided to place limits on executions of the mentally retarded, is thus irrelevant in the lower federal courts.

In addition, Bell's case exemplifies the wisdom behind Penry's decision to allow juries to examine the impact of mental retardation on culpability on a case-by-case basis.  While Bell has scored at a level of mild mental retardation throughout his life, an expert also testified that he was competent to stand trial and knew the difference between right and wrong.  He carefully planned the murders of Ferd and Eileen Chisum, assembling papers, a knife, handcuffs, and extension cords from which he had removed the ends, and he tricked the Chisums into letting him into their house on the pretext that he wanted their advice about attending school.  He

forced Eileen Chisum to write a false name on several checks before he killed her, and he then tried to cash one of those checks the day after the murder. The murders were executed ruthlessly and brutally. There was, in short, plenty of evidence to support the jury's post-Penry weighing of Bell's mental retardation against his moral culpability.

As a footnote, we, like the state courts, reject the argument that the federal Americans with Disabilities Act somehow entitles Bell to exoneration from the death penalty. The ADA neither addresses the imposition of criminal penalties, nor does it suggest that mentally disabled Americans should be treated differently from other Americans who commit crimes.

The state courts did not render an unreasonable decision in rejecting Bell's contentions concerning his mental retardation.

**2. Whether Bell made a substantial showing that he was denied any constitutional right regarding newly discovered evidence.**

Under AEDPA, a COA will issue only if Bell makes "a substantial showing" that he was denied a federal constitutional right. 28 U.S.C. § 2253(c)(2). A substantial showing means that reasonable jurists would find the state courts' assessment of Bell's claim debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 478, 120 S.Ct. 1595, 1600 (2000). The federal court's assessment

10

of Bell's claim depends, in turn, on the "reasonableness" of the state court's decision. 28 U.S.C. § 2254(d) and (e).

To obtain relief from a judgment based on newly discovered evidence, a petitioner generally must demonstrate that (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the defendant's failure to detect the evidence was not due to a lack of due diligence; (3) the evidence is material, not merely cumulative or impeaching; and (4) the evidence would probably produce an acquittal at a new trial. Lucas v. Johnson, 132 F.3d 1069, 1076 n.3 (5th Cir.), cert dism'd., 524 U.S. 965 (1998).

Bell contends that affidavits procured in 1997 from his mother, his cousin, and most prominently, his former co-defendant Sheppard Watson, would have demonstrated that Bell was beaten by law enforcement officers to induce him to confess. He goes on to argue that based on this evidence, his confession would have been excluded, and he would not have been convicted of capital murder. In his appellate brief, Bell focuses on Watson's affidavit, which described Watson's alleged beating by the police and Watson's suspicion that Bell was beaten and, somehow, is supposed to fortify Bell's claim that he was physically forced to confess.

The state habeas court rejected this claim, finding both that Bell did not prove that the "new evidence" was unknown to him at the time of trial and that his attorneys at the second trial

11

conceded the admissibility of Bell's confession, which had been admitted at the first trial despite a claim of police brutality. Bell disagrees only with the former finding, but he does not make a substantial showing, by clear and convincing evidence, to rebut it.[3]  See 28 U.S.C. § 2254(e)(1).  The state court findings are thus presumed correct.

Bell hopes to circumvent the adverse findings by alleging that his attorneys were constitutionally ineffective for not "discovering" the "new evidence" and for not moving to suppress his confession at the second trial.  See generally Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984).  The state courts responded that Bell had to know about evidence bolstering his coerced confession claim.  His attorneys were not defective if he failed to communicate with them.  The state courts alternatively found that the attorneys' performance could not have prejudiced Bell, because even if the cousin's and Watson's testimony had been offered at trial, it would have been cumulative and, from such biased sources, not very credible. We agree.  There was substantial incriminating evidence even apart from Bell's confession.  Bell was not prejudiced by his attorneys' conduct.

---

[3]    Bell's mother's evidence could not be "new," as she testified similarly in both of his trials.  And Bell knew that his cousin had seen him in jail.

12

The state courts' analysis of <u>Strickland</u> reasonably applies the relevant constitutional law in light of the state court record.

Bell has failed to make a substantial showing that his constitutional rights were violated by his attorneys' errors or by the absence at his second trial of newly discovered evidence.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court denying habeas corpus relief on Bell's first contention is **AFFIRMED**. We **DENY** a certificate of appealability on Bell's second contention.