United States Court of Appeals

Fifth Circuit

**F I L E D**

**June 16, 2005**

Charles R. Fulbruge III
Clerk

REVISED JUNE 30, 2005

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 04-70004

KENNETH WAYNE MORRIS,

Petitioner-Appellant,

versus

DOUG DRETKE, Director, Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent-Appellee.

Appeal from the United States District Court
For the Southern District of Texas

Before HIGGINBOTHAM, DeMOSS, and DENNIS, Circuit Judges.

DeMOSS, Circuit Judge:

Petitioner-Appellant Kenneth Wayne Morris ("Morris") sought a COA on the issue whether the presentation of a factually stronger habeas claim in federal court than in the state courts always mandates a dismissal without prejudice based on the exhaustion principle. *Morris v. Dretke*, 379 F.3d 199, 201 (5th Cir. 2004). We granted Morris a COA on that exhaustion issue and asked the parties to specifically address the following:

> [W]hether Morris's presentation of additional evidence of
> mental retardation in federal court beyond that which he

presented in the state courts is exhausted because it only supplemented his state *Atkins* [*v. Virginia*, 536 U.S. 304 (2002)] claim or is unexhausted because it fundamentally altered his state *Atkins* claim; and if Morris's claim is [thus rendered] unexhausted, whether he has met any exception to excuse exhaustion.

*Id.* at 207. For the following reasons, we determine that Morris's presentation of new evidence merely supplemented the *Atkins* claim he had already presented to the state courts; his *Atkins* claim meets exhaustion per 28 U.S.C. § 2254(b)(1)(A); and the district court erred in dismissing Morris's *Atkins* claim for want of exhaustion. Therefore, we VACATE the order of dismissal without prejudice and REMAND with instruction to conduct an evidentiary hearing to determine whether Morris is mentally retarded and thus categorically ineligible for the death penalty pursuant to *Atkins*. *See* 536 U.S. at 321 (holding the Eighth Amendment "places a substantive restriction on the State's power to take the life of a mentally retarded offender") (internal quotation marks and citation omitted).

## BACKGROUND

In December 1993 Morris was convicted and sentenced to death for the capital offense of murdering James Moody Adams. On direct appeal, the Texas Court of Criminal Appeals ("TCCA") affirmed Morris's conviction and sentence; the Supreme Court of the United States denied *certiorari*. The TCCA then denied Morris's application for writ of habeas corpus. In April 2000 Morris initiated federal habeas proceedings. The district court denied

2

Morris habeas relief and denied him a COA. This Court also denied Morris a COA. Morris did not seek *certiorari* review in the Supreme Court. Texas set an execution date of April 15, 2003.

On June 20, 2002, the Supreme Court held that the Eighth Amendment protects against the execution of mentally retarded defendants. *Atkins*, 536 U.S. at 321. *Atkins* claims are applicable to defendants on collateral review. *Bell v. Cockrell*, 310 F.3d 330, 332 (5th Cir. 2002). Those defendants whose convictions were already final on direct review, like Morris, had one year to file their *Atkins* claims under 28 U.S.C. § 2244(d)(1)(C). On April 10, 2003, within ten months after *Atkins* was decided, Morris filed a successive application for writ of habeas corpus in state district court. The sole legal basis for Morris's successive state writ was *Atkins*'s application to him as a mentally retarded person facing execution. Morris argued that his application met the subsequent application requirements of Article 11.071, Section 5, of the Texas Code of Criminal Procedure because the constitutional legal basis for his claim, *Atkins*, was unavailable at the time he filed his previous state habeas corpus application.

In his successive state application, Morris referenced the American Association on Mental Retardation ("AAMR") standard for determining mental retardation:

> Mental retardation refers to substantial limitations in present functioning. It is characterized by [1] significantly subaverage intellectual functioning, existing concurrently with [2] related limitations in two

3

or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. [3] Mental retardation manifests before age 18.

AAMR, MENTAL RETARDATION: DEFINITION, CLASSIFICATION, AND SYSTEMS OF SUPPORT 5 (9th ed. 1992).[1] Morris also referenced the nearly identical definition of mental retardation in the Diagnostic and Statistical Manual of Mental Disorders:

The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C).

AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 41 (text rev., 4th ed. 2000) ("DSM-IV").

Morris recognized the lack of Intelligence Quotient ("IQ") evidence in his record but noted various school records obtained by his counsel, including a letter concerning Morris's official withdrawal from the Cypress-Fairbanks Public Schools special

---

[1]The current AAMR definition of mental retardation provides:

Mental retardation is a disability characterized by significant limitations both [1] in intellectual functioning and [2] in adaptive behavior as expressed in conceptual, social, and practical adaptive skills. [3] This disability originates before age 18.

AAMR, MENTAL RETARDATION: DEFINITION, CLASSIFICATION, AND SYSTEMS OF SUPPORT 19 (10th ed. 2002). Morris also provided this definition in his state habeas petition.

4

assignment campus.[2]  Morris also supported his claim of retardation with evidence regarding his adaptive deficits: affidavits from family members and friends noting he cannot read or write with any proficiency and had always been very suggestible and easily influenced; notes from a mental health expert appointed for his trial, Dr. Jerome Brown, indicating Morris was intellectually limited and had learning problems; and partial school records classifying Morris as learning disabled and indicating he dropped out at age 15 after repeating the eighth grade, having failed the third, fifth, and eighth grades and most of his special education/resource classes.

In addition, Morris included an affidavit from psychologist Dr. Richard Garnett who reviewed the above materials "in an attempt to determine whether there was sufficient evidence to support a motion for a hearing to determine whether or not Mr. Morris might meet the criteria for mental retardation as defined by current psychological theory."  Dr. Garnett offered his informed, professional opinion that there were "indeed sufficient indicators to suggest that Mr. Morris has mental retardation" and "[h]e should be given the opportunity for a professional assessment and evaluation as a part of that review, and [] then go before the court for a determination."  Morris indicated that Dr. Brown had

---

[2]Morris entered the alternative learning center ("ALC") after receiving grades of 50 or below in every class at his regular campus.  Morris was subsequently expelled from the ALC.

made a determination that he was not mentally retarded. However, Dr. Garnett noted that Dr. Brown "for some reason apparently did not administer a test of intellectual level." Morris contended that Dr. Brown's testing and methodology rendered his mental retardation assessment scientifically unreliable, in light of his not having used any intelligence testing instrument.

Morris argued that together all the evidence he submitted demonstrated his deficiencies in the following specific adaptive behavioral skill areas: (1) conceptual, referring to Morris's inability to read and write and his failures in functional academics; (2) social, referring to Morris's inability to obey the law and follow rules, and his inability to avoid victimization; and (3) practical, referring to Morris's inability to develop instrumentalities of daily living or occupational skills, and his inability to maintain a safe environment.

Furthermore, Morris maintained that Gerald Bierbaum, one of the attorneys signing Morris's successive application, had approached the trial court to request that counsel be appointed so an expert could be obtained to perform intellectual testing and to request a modification of the execution date. Morris contended that the trial court would consider such request if the state did not oppose it and that the attorneys who signed Morris's successive writ conferred with the Harris County District Attorney's office, which was so opposed. Morris argued that an evidentiary hearing was necessary to develop and fully present all available evidence

supporting his claim of mental retardation under **Atkins**. Morris then expressly requested the following: leave to file his successive state writ, the appointment of counsel, the necessary resources to establish his claims, and an evidentiary hearing. The TCCA dismissed Morris's successive state habeas application as an abuse of the writ on April 14, 2003.[3]

On April 15, 2003, Morris filed a request with this Court for authorization to file a successive federal habeas petition. Morris based his request on the same information he presented in the state courts. This Court stayed Morris's execution and tentatively granted his motion to file a successive petition. We held that

---

[3]The Respondent-Appellee Doug Dretke (the "Director") in his response brief on appeal has "abandon[ed] any perceived reliance of procedural default" based on abuse of the writ in the state courts "[t]o the extent any prior pleading by the [state] in this case can be construed as conceding or arguing procedural default." The Director here thus expressly waives this argument on appeal; if this Court determines such new evidence does not render Morris's claim unexhausted, the Director suggests he then will argue that the TCCA's adjudication, as a decision on the merits, is subject to AEDPA deference. As we do not find the Director's waiver here in any way "questionable," *see* **Graham v. Johnson**, 94 F.3d 958, 971 (5th Cir. 1996) (rejecting the state's waiver on exhaustion where it simply wanted to avoid further politicization of Graham's case), and because express waivers are ordinarily to be honored, *see* **id.** at 970, we exercise our discretion to accept the Director's waiver of the argument that abuse of the writ acts an a state procedural bar to federal review in Morris's case. Thus, this Court does not engage in an analysis of whether the TCCA's treatment of Morris's successive state habeas application based on **Atkins** resulted in an independent and adequate state bar to federal habeas review. *See, e.g.,* **In re Johnson**, 334 F.3d 403, 405 (5th Cir. 2003) (Jones, J., concurring) (noting in movant's case, where he sought leave to file a successive federal habeas petition based on **Atkins**, there was "no reason why federal courts are not bound by the procedural bar rule to deny him federal habeas relief" based on abuse of the writ).

Morris had made a *prima facie* showing that: (1) the claim to be presented in the proposed successive habeas application had not been previously presented in any prior application to this Court; (2) such claim relied on a previously unavailable new rule of constitutional law, which had been made retroactive to cases on collateral review by the Supreme Court; and (3) he should be categorized as mentally retarded. *In re Morris*, 328 F.3d 739, 740-41 (5th Cir. 2003). Our authorization for Morris to file his successive habeas petition was tentative in that it was dependent on the district court finding that the requirements under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") for such filing had been met. *Id.* at 741 (citing 28 U.S.C. § 2244(b)(4)).

On April 28, 2003, Morris moved the district court for appointment of counsel and approval of the retention of expert and investigative assistance; the court granted this motion on May 20, 2003. Morris then filed a skeletal petition for writ of habeas corpus in federal district court on May 30, 2003, which he amended on July 7, 2003. This petition raised the sole issue whether *Atkins*'s constitutional bar against execution of the mentally retarded applied to Morris. In addition to the evidence previously presented in the state courts and the Fifth Circuit, Morris presented new evidence supporting his retardation claim to the district court, including an affidavit from clinical psychologist

Dr. Susana A. Rosin who recently tested Morris's IQ and level of adaptive and conceptual functioning. Morris presented two affidavits from James R. Patton who holds a doctorate in special education and disabilities; Dr. Patton reviewed Morris's IQ results along with all the materials presented to the state courts.

Morris scored a verbal IQ of 57, a performance IQ of 58, and a full-scale IQ of 53 on the Wechsler Adult Intelligence Scale-III tests ("WAIS-III") administered by Dr. Rosin. The first prong of the AAMR definition of mental retardation is performance on an appropriate intellectual assessment instrument that is two standard deviations below the mean, which is approximately 70 on the WAIS-III.[4] On the Wide Range Achievement Test-3 ("WRAT-3") administered by Dr. Rosin, Morris scored less than 45 on each conceptual skill subtest (reading, arithmetic, and spelling). On the Vineland Adaptive Behavior Scales ("VABS") tests Dr. Rosin administered, Morris achieved standard scores of 34 in communication, 44 in social, and 40 in daily living. The second prong of the AAMR definition of mental retardation is performance on an appropriate adaptive behavior instrument that is two standard deviations below the mean, which is approximately 70 on the VABS and the WRAT-3, according to Dr. Patton. Dr. Rosin unequivocally diagnosed Morris with mental retardation. Morris presented a second affidavit from

_____

[4]"'Significantly subaverage intellectual functioning is defined as an IQ of about 70 or below (approximately 2 standard deviations below the mean).'" *Ex Parte Briseno*, 135 S.W.3d 1, 7 n.24 (Tex. Crim. App. 2004)(quoting DSM-IV at 39).

Dr. Rosin which refuted Respondent's claim that Morris was malingering during the testing. Dr. Patton opined that Morris functions intellectually and adaptively within the mentally retarded range and that this condition predated his 18th birthday.

Morris also presented a new affidavit from Dr. Garnett stating that his review of Dr. Rosin's findings strengthened his opinion that Morris is mentally retarded and recommending that a court hold a full hearing on the retardation issue. Morris presented affidavits from Morris's original trial counsel stating that they never asked their mental health expert to test Morris for mental retardation, but rather to determine whether Morris posed a threat of future danger. Finally, Morris presented a document purportedly signed by Dr. Brown, stating that he performed no formal intellectual testing of Morris in connection with his evaluation; and another document purportedly signed by Dr. Garnett reconfirming his diagnosis of Morris as mentally retarded.

The Director moved to dismiss and for summary judgment. Morris responded to both motions and requested the district court conduct an evidentiary hearing. In an order entered December 5, 2003, the district court denied the Director's motion to dismiss and accepted submission of Morris's successive federal petition under 28 U.S.C. § 2244(b); denied the Director's motion for summary judgment; and dismissed Morris's amended petition without prejudice. In that order the district court determined that because Morris had not presented his *Atkins* claim to the state

10

courts in its current state – supported with "substantive evidence" – the state courts did not have a fair opportunity to apply *Atkins* to the substance of Morris's now better documented habeas claim. Therefore, Morris had not exhausted his *Atkins* claim. *See* 28 U.S.C.A. § 2254(b)(1)(A) (West Supp. 2004). The district court indicated, however, that it would equitably toll the time Morris will have spent in federal court should he return after having exhausted any available state court remedies. On January 7, 2003, the district court entered an order denying Morris's motion to alter or amend judgment under Rule 59(e), or alternatively for the issuance of a COA. Morris then noticed his appeal and filed a request for COA with this Court. On July 21, 2004, we granted Morris a COA on the issue of exhaustion. *Morris*, 379 F.3d at 207.

## DISCUSSION

28 U.S.C. § 2254(b)(1)(A) requires that federal habeas petitioners fully exhaust available state court remedies before proceeding in federal court.[5] The longstanding exhaustion requirement is not jurisdictional, but reflects the policy of federal-state comity, which is designed to give state courts the

---

[5]Section 2254(b)(1)(A) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
(A) the applicant has exhausted the remedies available in the courts of the State . . . .

28 U.S.C.A. § 2254(b)(1)(A) (West Supp. 2004).

11

initial opportunity  to consider and correct alleged violations of their prisoners' federal rights.  **Anderson v. Johnson**, 338 F.3d 382, 386 (5th Cir. 2003).  This Court reviews *de novo* the legal question of whether a federal habeas petitioner has exhausted state court remedies.  **Id.** (citing, in part, **Wilder v. Cockrell**, 274 F.3d 255, 259 (5th Cir. 2001)).[6]

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." **Mercadel v. Cain**, 179 F.3d 271, 275 (5th Cir. 1999). Such presentment can take place via direct appeal or state habeas proceedings.  **Orman v. Cain**, 228 F.3d 616, 620 (5th Cir. 2000). "[A]s a general rule dismissal is not required when evidence presented for the first time in a habeas proceeding *supplements*, but does not *fundamentally alter*, the claim presented to the state courts."  **Anderson**, 338 F.3d at 386-87 (internal quotation marks and citation omitted); *see also* **id.** at 388 n.24 (citing **Vasquez v. Hillery**, 474 U.S. 254, 262 (1986)).

For example, in **Anderson**, where the highest state court denied

---

[6]The Director argues that the proper standard for this Court to review the district court's dismissal without prejudice here is abuse of discretion.  In **Horsley v. Johnson**, 197 F.3d 134 (5th Cir. 1999), cited by the Director, this Court decided whether the district court's dismissal without prejudice *as opposed to with prejudice* was an abuse of discretion, not the legal issue of whether new evidence rendered the petitioner's claim unexhausted. We instead review that discrete question of law *de novo*.  **Anderson**, 338 F.3d at 386 (citations omitted).

Anderson's petition without holding an evidentiary hearing, even though he presented more and stronger evidence (an affidavit from a key eyewitness not called at his trial) in his federal habeas petition, this Court determined that the new evidence did not "fundamentally alter" his ineffective assistance of counsel ("IAC") claim and therefore held that Anderson had properly exhausted. 338 F.3d at 388-89; *see also* **Dowthitt v. Johnson**, 230 F.3d 733, 746 (5th Cir. 2000) (finding that Dowthitt had exhausted his IAC mental illness claim where he had presented detailed assertions of his paranoid schizophrenia to the state courts, even though he later offered additional affidavits by mental health experts opining on that same diagnosis to the federal court that were not previously presented to the state courts).

However, "evidence that places the claims in a significantly different legal posture must first be presented to the state courts." **Anderson**, 338 F.3d at 387 (internal quotation marks and citation omitted); *see, e.g.*, **Graham**, 94 F.3d at 965, 969 concluding that Graham's new offering of several affidavits of alibis and eyewitnesses, a police report, two psychologist reports, and a firearms report to the federal court but not the state courts rendered his IAC and actual innocence claims unexhausted). The exhaustion inquiry that courts perform – determining whether additional evidence fundamentally alters or merely supplements the state petition – is necessarily case and fact specific. **Anderson**,

13

38 F.3d at 386, 388 n.24.

Lack of exhaustion may be excused.  "A petitioner may overcome such a procedural default, however, and obtain federal habeas corpus review of his barred claims on the merits, if he can demonstrate cause for the defaults and actual prejudice." **Martinez v. Johnson**, 255 F.3d 229, 239 (5th Cir. 2001) (discussing whether an IAC claim not presented to the state courts was procedurally barred).  A petitioner may also overcome a procedural default if he can show that "failure to consider the claims will result in a fundamental miscarriage of justice." **Barrientes v. Johnson**, 221 F.3d 741, 758 (5th Cir. 2000) (quoting **Coleman v. Thompson**, 501 U.S. 722, 750 (1991)).  Also, "exhaustion is not required if it would plainly be futile." **Graham**, 94 F.3d at 969.

The district court's dismissal without prejudice of Morris's successive federal habeas petition was premised entirely on that court's legal conclusion that the new evidence presented for the first time to the federal court rendered Morris's **Atkins** claim unexhausted.

**Whether the district court erred in finding that Morris's additional evidence presented in federal court rendered his *Atkins* claim unexhausted.**

Morris contends he argued consistently and identically in state and federal court that he is mentally retarded and thus his execution is barred by the Eighth Amendment pursuant to **Atkins**. Morris argues that although the evidence he was able to introduce

14

in the district court was greater than that introduced in the state courts, his underlying, singular **Atkins** claim was not fundamentally altered and thus was properly exhausted in the state courts.  For this proposition, Morris primarily relies on **Vasquez**, **Anderson**, and **Dowthitt**.

In **Vasquez**, the district court pursuant to Rule 7 of the federal habeas rules directed the federal habeas petitioner and the state to provide additional statistical data in order to "supplement and clarify" the state court record presented for review.  474 U.S. at 257.  The state objected that the additional evidence drastically altered the petitioner's equal protection challenge already presented to the state courts, such that the claim was rendered "unsuitable for federal habeas review without prior consideration by the state courts."  *Id.*  The Supreme Court rejected the state's argument and held that "the supplemental evidence presented . . . *did not fundamentally alter* the legal claim already considered by the state courts, and, therefore, did not require that [Hillery] be remitted to state court for consideration of that evidence."  *Id.* at 260 (emphasis added).

In **Dowthitt**, the habeas petitioner argued that he had been deprived of the effective assistance of counsel because his trial counsel had failed to present a mitigation defense based on his mental illness.  230 F.3d at 743.  In state court proceedings, Dowthitt presented his **Strickland v. Washington**, 466 U.S. 668

15

(1984), claim based on evidence his counsel on habeas located, including a hospital form and Air Force records indicating Dowthitt suffered from mental illness. *Dowthitt*, 230 F.3d at 743-44. However, on federal habeas, Dowthitt additionally produced affidavits from two mental health experts whose clinical impressions were that Dowthitt had paranoid and schizophrenic features – severe mental problems. *Id.* at 744. Morris notes this decision was made pursuant to the exhaustion standards laid out in *Graham*, 94 F.3d at 968, and *Joyner v. King*, 786 F.2d 1317, 1320 (5th Cir. 1986) – whether the claim before the federal court is "in a significantly different and stronger evidentiary posture than it was before the state courts." This Court found that "Dowthitt [did] not allege 'new facts' via the affidavits of the two experts because 'all crucial factual allegations were before the state courts at the time they ruled on the merits' of Dowthitt's habeas petition." *Dowthitt*, 230 F.3d at 746. Because Dowthitt had presented to the state habeas court his assertions that he suffered from paranoid schizophrenia, this Court determined the expert affidavits added little to those claims and did not run afoul of the exhaustion requirement. *Id.* (finding consideration of the affidavits not precluded).

Morris argues that this Court in *Anderson* employed a different framework for analyzing new evidence not presented to the state courts on habeas. In state court habeas proceedings, Anderson

16

argued under ***Strickland*** that his attorney was ineffective for failing to investigate and present the testimony of an eyewitness named Arthur Gray, whose testimony would have excluded Anderson as the perpetrator. ***Anderson***, 338 F.3d at 385-86. Anderson did not include any evidence to support this allegation. ***Id.*** However, in federal court, Anderson attached Arthur Gray's affidavit stating that Anderson was not present at the scene of the crime. ***Id.*** While the Court conceded that the exhaustion standard in the situation where new evidence is presented to the federal court which has not been presented to the state courts was nebulous, ***id.*** at 387, the Court recited: "Although exhaustion inquiries are fact-specific, as a general rule dismissal is not required when evidence presented for the first time in a [federal] habeas proceeding *supplements*, but does not *fundamentally alter*, the claim presented to the state courts." ***Id.*** at 386-87 (internal quotation marks omitted) (citing ***Caballero v. Keane***, 42 F.3d 738, 741 (2d. Cir. 1994)). The Court held the exhaustion principle was satisfied, noting in an "admittedly close case" that several factors weighed in favor of exhaustion. ***Anderson***, 338 F.3d at 388.

First, as Morris explains, the ineffectiveness portion of Anderson's state habeas brief was "remarkably detailed in both fact and law." ***Id.*** The brief explained Anderson's counsel's lack of investigation into the eyewitness Arthur Gray and what he could have testified to at trial. ***Id.*** Second, Anderson was diligent and

17

consistent in arguing his claim: "The 'new' evidence (Gray's affidavit) does not 'fundamentally alter' Anderson's state claim; it merely confirms what he has been asserting all along." *Id.* As such, the additional evidence was a "supplement" to the state court record but did not place his claim in a "significantly different legal posture." *Id.* Third, the Court noted that Anderson did not attempt to expedite federal review by withholding essential facts from the state courts. *Id.* at 389. Any failure to develop facts was not the result of a lack of diligence; "if the state court had held an evidentiary hearing, Gray's exculpatory testimony likely would have been elicited, as it was in the federal proceedings." *Id.*

Morris stresses the Court in *Anderson* considered *Joyner* and related Fifth Circuit precedent of limited relevance because such cases were decided before or without reference to *Vasquez*. 338 F.3d at 389 n.24. Morris also emphasizes the case- and fact-specific nature of the inquiry whether new evidence just supplements or fundamentally alters a claim. *See id.*

Morris attempts to distinguish his case from those cases in which courts of appeals have found new evidence presented for the first time in federal court rendered the petitioner's claim unexhausted, arguing unlike in those cases, in his case the additional evidence did not transform his *Atkins* claim into an

18

entirely new claim.[7]  Finally, Morris contends *Graham* has no import

because it does not mention *Vasquez*.

In sum, Morris likens his case to particularly that of the

petitioner in *Anderson* and applies the factors therein.  Morris

asserts, first, his state petition was remarkably detailed in fact

and law – not a general, conclusory allegation of mental

retardation.  Second, Morris argues he diligently brought forth all

the evidence he had or could obtain before filing and applied all

of the existing law and authorities.  Moreover, at the state court

level, Morris requested counsel be appointed and funds be granted

so he could establish his *Atkins* claim.  Last, Morris contends he

did not deliberately withhold any portion of his claim in order to

expedite federal review or to obtain a more favorable forum.

Therefore, Morris insists the district court erred in dismissing

his *Atkins* claim.

---

[7]For example, Morris contends in *Demarest v. Price*, 130 F.3d 922, 938-39 (10th Cir. 1997), the petitioner presented for the first time in federal court such substantial new evidence that his *Strickland* claims effectively became new claims attacking new forms of ineffectiveness.  Likewise, in *Caballero*, 42 F.3d at 739-41, the Second Circuit found the petitioner's claim unexhausted because a new fact concerning trial counsel's being under the influence of drugs during the trial cast the *Strickland* claim in an entirely new light.  *See also Cruz v. Warden*, 907 F.2d 665 (7th Cir. 1990) (finding new factual allegations regarding trial counsel's behavior rendered petitioner's *Strickland* claim unexhausted).  In *Landano v. Rafferty*, 897 F.2d 661, 669-70 (3d. Cir. 1990), although the petitioner made his *Brady v. Maryland*, 373 U.S. 83 (1963), claims in both state and federal court, only at the federal level did he indicate what *Brady* material had been suppressed; so his claim was unexhausted.

19

The Director responds that the district court was within its discretion in dismissing Morris's federal habeas petition without prejudice[8] because Morris's new evidence fundamentally alters his claim under established federal law. The Director insists that Morris's additional evidence, the newly generated IQ evidence, is so fundamental to his claim of mental retardation that, standing alone, it would have warranted successive review in the state courts.

The Director first points to the significance of the new evidence as a major factor in determining whether the advanced claim is exhausted. The Director argues that *Kunkle v. Dretke*, 352 F.3d 980 (5th Cir. 2003), controls. In state court, the petitioner, Kunkle, only presented a conclusory affidavit from trial counsel "contending that there was abundant mitigating evidence . . . including a troubled home life and a family history of mental illness" to support his IAC claim. *Id.* at 987. However, in federal court, Kunkle presented actual evidentiary support, including an affidavit from his mother and a detailed psychological report. *Id.* The Director notes that this Court emphasized the significant difference between asserting a conclusory theory and actually backing up that theory with concrete evidence; this Court found Kunkle's claim unexhausted. *Id.* at 988.

Second, the Director argues that Morris does not meet the

---

[8]*See supra* n.6.

factor of whether the evidence is ascertainable from that extant record or discoverable from existing data. *See* **Vasquez**, 474 U.S. at 259 (finding computer-generated statistics presented existing data in a more reliable way); *see also* **Dowthitt**, 230 F.3d at 745-46 (noting newly presented affidavits were based on discoverable medical records).

The Director next maintains that by applying the above factors to Morris's case, his new IQ evidence fundamentally alters his **Atkins** claim. The Director argues that in the state courts, Morris presented no IQ data at all, much less an IQ score below 70. With the new evidence, stresses the Director, Morris's **Atkins** claim turned around 180 degrees because his IQ test scores alone could withstand a summary dismissal, regardless of any additional data supporting the other prongs of mental retardation. *See* **Ex parte Williams**, No. 43,907-02, 2003 WL 1787634, at *2-3 (Tex. Crim. App. Feb. 26, 2003) (Cochran, J., joined by Meyers, J., concurring in dismissal) (unpublished opinion). In addition, the Director contends, unlike **Vasquez**, Morris's missing IQ data could never have been educed from the existing record; Morris's alleged diagnosis of mental retardation depends on the five IQ tests administered on successive federal habeas review and interpretation of those results. Also, the Director notes that Morris's IQ evidence was not requested, as in **Vasquez**, as an interpretive aid for meaningful review. The Director maintains Morris's new evidence sheds new

light on his claim that the state courts should be given the opportunity to review.

The Director also suggests that, although not intentionally, Morris is attempting state court bypass to achieve a more favorable forum and cannot demonstrate he acted diligently in state court. Finally, the Director argues that in light of ongoing development of state court procedures implementing *Atkins*, justice would be better served by insisting on exhaustion. That is, the federal court's premature adjudication of Morris's stronger *Atkins* claim would deprive the state court of the potential opportunity to make important law on successively presented and facially stronger *Atkins* claims in the context of Article 11.071, Section 5.

In reply, Morris distinguishes his case from that of *Kunkle*. Morris notes the Court there concluded "Kunkle had not exhausted this ineffective assistance claim because Kunkle possessed this additional information at the time he filed his second state petition, yet failed to present these significant additional facts." 352 F.3d at 988. Unlike Kunkle, Morris did not possess the IQ scores and affidavits concerning those scores when he filed his second state habeas petition. Morris instead presented all the concrete evidence he did have to support his *Atkins* claim and requested resources to develop further evidence; he argues he did not possess the evidence and deliberately bypass state court. Moreover, Morris argues *Kunkle* has little import here because the

22

decision relied not on **Anderson**, but rather on **Graham**, which did not mention **Vasquez**. Morris also discounts any reliance on the unpublished **Williams** as to any supposed threshold evidentiary requirement for **Atkins** claims because **Williams** has no precedential value.

The district court here found that Morris supported his successive state application "with little more than speculation." The court primarily cited **Joyner**, 786 F.2d at 1320, for the proposition that comity and federalism require "new factual allegations in support of a previously asserted legal theory" first be presented to the state courts. The court then concluded that the expanded nature of Morris's **Atkins** claim rendered his successive petition unexhausted. We disagree.

After thorough case- and fact-specific review of Morris's situation, this Court concludes that the new IQ evidence presented for the first time in federal court, although it indeed factually bolstered his sole **Atkins** claim, did not render Morris's **Atkins** claim – which same legal Eighth Amendment claim he presented to the state courts and supported with pertinent, if not conclusive, evidence of low intellectual functioning and adaptive deficits, from childhood on – as fundamentally altered and thus unexhausted. We find Morris's case falls much closer on the spectrum to the cases where this Court has found new evidence merely supplemented the petitioner's claims. Therefore, the district court erred in

23

finding that the new evidence rendered Morris's *Atkins* claim unexhausted in the state courts.

Similar to the petitioner in *Dowthitt*, Morris has produced on federal habeas additional evidentiary support indicating, beyond what the evidence he produced in the state habeas courts indicated, that he is mentally retarded. The same crucial intellectual and adaptive deficiencies alleged by Morris in the state courts – which led Dr. Garnett to conclude Morris indeed sufficiently possessed the required indicators for mental retardation to merit further professional assessment and court review – have been affirmed by such additional professional assessment evidence presented to the federal court. *See Dowthitt*, 230 F.3d at 746 (noting the crucial facts of Dowthitt's mental illness of the paranoid, schizophrenic type had already been presented to the state courts and thus finding the expert affidavits further supporting that mental illness exhausted).

As were the petitioner's claims in *Anderson*, Morris's "claim[] [is] unquestionably in a comparatively stronger evidentiary posture than [it was] in state court," 338 F.3d at 388 (internal quotation marks and citation omitted). But, similarly, "several facts militate in favor of exhaustion in this admittedly close case." *Id.* First, thorough review of Morris's successive state habeas brief reveals that his *Atkins* claim was "remarkably detailed in both fact and law." *Anderson*, 338 F.3d at 388. Morris

24

unquestionably brought his Eighth Amendment claim pursuant to *Atkins*. He also properly outlined the AAMR's definition for mental retardation, since adopted by the TCCA as one of Texas's current standards for determining mental retardation, *Briseno*, 135 S.W.3d at 7-8, and noted the necessity to meet all three essential prongs of the definition. *See id.* Morris also clearly acknowledged that IQ evidence was lacking in his particular case but still insisted "[t]here is good reason to believe that [Morris is retarded] . . . because of the documented history of adaptive deficits," including Morris's "inability to read and write and his failure in functional academics," "inability to obey the law and follow rules," "inability to avoid victimization," "inability to develop instrumentalities of daily living [and] occupational skills," and "inability to maintain a safe environment," all of which were attested to by the sworn affidavits and school records presented to the state courts.

Moreover, Morris saw fit to present an expert affidavit, which, albeit preliminarily, provided a psychologist's acknowledgment of and support for Morris's mental retardation claim. Morris has consistently asserted that he is mentally retarded and that, given the opportunity and resources, intellectual tests would confirm that. As in *Anderson*, the new evidence the district court allowed Morris to develop here does not fundamentally alter his state claim; it functions as a "supplement

25

to the record presented to the state court, but does not place the claim[] in a significantly different legal posture." 338 F.3d at 388 (internal quotation marks and citation omitted).

As we also noted in *Anderson* in reaching our conclusion, despite what the Director argues here, we see nothing in this record that shows Morris "attempted to expedite federal review by deliberately withholding essential facts from the state courts." *Id.* at 389 (citing *Vasquez*, 474 U.S. at 260). There is no evidence that Morris intentionally withheld any previous IQ testing results or chose to forego any provided opportunity for the proper IQ testing.

Morris's case is distinguishable from the petitioner in *Graham* because it was ascertainable what further evidence Morris would be providing to the federal court if he could develop it – IQ scores indicative of low intelligence and evaluation of those results. In contrast, Graham presented an abundance of new evidence to the federal court that had not been presented, even abstractly, to the state courts – including several affidavits from eyewitnesses and alibi witnesses, who had not previously been mentioned in Graham's state habeas proceedings; a psychologist's report regarding the unreliability of the identification testimony by the state's main witness; and a police ballistics report showing a weapons discrepancy. 94 F.3d at 965. Moreover, this Court also took into consideration Graham's freedom to pursue his actual innocence claim

26

in a post-conviction evidentiary hearing, *see **id.*** at 969 (citing

***Graham v. Texas Board of Pardons and Paroles***, 913 S.W.2d 745, 751

(Tex. Ct. App.–Austin 1996)), and that his IAC claim had been

dismissed without prejudice by the TCCA, *see* 94 F.3d at 969 (citing

***Ex Parte Graham***, 853 S.W.2d 565, 571 & n.1 (Tex. Crim. App. 1993)).

In contrast, Morris's **Atkins** claim was dismissed by the TCCA as an

abuse of the writ.[9]

Morris's case is also distinguishable from **Kunkle**, the chief

case the Director relies on, because there Kunkle only presented to

the state courts "a conclusory affidavit from trial counsel"

regarding mitigation evidence of Kunkle's troubled home life and

his family's history of mental illness. 352 F.3d at 987. Only at

the federal level did Kunkle produce an affidavit from his mother

and a psychological report. ***Id.*** Here, Morris presented school

records and multiple affidavits from his family members with

personal knowledge of his learning and adaptive issues. Plus,

Kunkle had a second procedural opportunity to present such new

evidence to the state courts; his federal habeas petition had been

dismissed as "mixed" because it contained exhausted and unexhausted

claims. ***Id.*** at 987-88. This Court noted that Kunkle provided no

---

[9]In addition, Morris is correct that **Graham** did not cite **Vasquez** but instead cited **Joyner** and **Brown v. Estelle**, 701 F.2d 494 (5th Cir. 1983). In **Anderson**, we noted that such "decisions . . . issued prior to (or soon after and without reference to) the Supreme Court's decision in **Vasquez v. Hillery** . . . are of limited relevance here." 338 F.3d at 388 n.24.

explanation of "why he did not present to the state court the same materials he had prepared and submitted to the federal court." ***Id.*** at 990. Here, Morris presented his single ***Atkins*** claim to both the federal and state courts; he also explicitly acknowledged what particular evidence he lacked and requested a chance to acquire it.[10]

Moreover, we note the Director points to no binding authority that requires an IQ test specifically, that is, entirely alone, at the core, or as any singular threshold, to provide the basis for a finding of mental retardation. Instead, the AAMR definition of mental retardation adopted by the TCCA in ***Briseno*** requires a showing of three interdependent prongs. 135 S.W.3d at 7-8. Likewise, the Texas Health and Safety Code section 591.003(13), also adopted by the TCCA as an alternative standard to the AAMR definition for a petitioner to show his mental retardation, defines mental retardation as "significantly subaverage general intellectual functioning that is concurrent with deficits in adaptive behavior and originates during the developmental period." TEX. HEALTH & SAFETY CODE ANN. § 591.003(13) (Vernon 2003); ***Briseno***, 135 S.W.3d at 7. Thus, IQ evidence standing completely on its own cannot provide the 180-degree turn the Director insists it does to withstand summary dismissal. *See, e.g.,* ***Briseno***, 135 S.W.3d at 7

---

[10]***Kunkle*** relied on ***Graham*** and ***Brown*** but did not cite either ***Vasquez*** or ***Anderson***. *See supra* n.9.

28

n.24 ("Psychologists and other mental health professionals are flexible in their assessment of mental retardation; thus, sometimes a person whose IQ has tested above 70 may be diagnosed as mentally retarded while a person whose IQ tests below 70 may not be mentally retarded."); *Stevenson v. State*, 73 S.W.3d 914, 917 (Tex. Crim. App. 2002) ("A low IQ score by itself, however, does not support a finding of mental retardation."). Finally, the unpublished concurrence in *Williams* suggesting otherwise, 2003 WL 1787634, at *2-3, fails to establish any threshold factual burden based on IQ alone for *Atkins* claims.

Morris specifically presented to the state courts a sworn affidavit from a psychologist who, after reviewing all the other testimonial and school record evidence likewise presented to the state courts, made the crucial preliminary factual allegation that there was a probability Morris indeed suffered from mental retardation. Although in federal court Morris has additionally presented IQ scores and expert assessment of those scores, the crucial fact that Morris possessed sufficient indicators for a diagnosis of mental retardation had already been presented to the state courts. The substance of Morris's *Atkins* claim was fairly presented to the highest state court, the TCCA. Thus, we find as a matter of law on this record that Morris's *Atkins* claim was not presented to the federal court in a significantly different legal posture than in the state courts and that the new evidence

29

presented did not fundamentally alter his **Atkins** claim.  Because we find that Morris's new evidence has met the exhaustion requirement of § 2254(b)(1)(A) for his **Atkins** claim to continue in federal court, this Court need not reach any argument concerning any exception to exhaustion.

In his prayer for relief, Morris requests that we remand his case to the district court for an evidentiary hearing.  We agree to so remand and note the following.  In cases where the legal question is whether the new evidence a petitioner puts forth for the first time on federal habeas on a particular claim already asserted on state habeas is exhausted under § 2254(b), subparts (d) and (e) of § 2254 concerning "factual development" are not implicated.  **Dowthitt**, 230 F.3d at 745 & nn.11-12.  In **Dowthitt**, we specifically considered that although both the Director and the petitioner "argue[d] this issue as one of 'factual development' under § 2254(d) and (e), it is more accurately analyzed under the 'exhaustion' rubric of § 2254(b)."  **Id.** at 745.  We explained that if new evidence on the particular claim is determined to be exhausted under § 2254(b)(1)(A), such evidence is not precluded from review and can properly be considered by the federal court.  See **id.** at 745-46.  We thus rejected the approach whereby a petitioner would have to meet the factual development requirements of § 2254(e)(2) to be entitled to have his new evidence on the particular claim be reviewed in federal court.  See **id.** at 745 &

30

nn. 11-12.

Instead, this Circuit classifies these specific cases as presenting the question whether the new evidence, not previously presented to the state courts but presented for the first time to the federal court, has met the exhaustion requirement of § 2254(b)(1)(A), *see id.* We do not in this case ask the question whether the petitioner has "failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). Here, Morris, having met the § 2254(b)(1)(A) exhaustion requirement on the IQ evidence presented for the first time on federal habeas, need not additionally overcome the obstacles of § 2254(e)(2). *See* **Dowthitt**, 230 F.3d at 745 & nn.11-12. Thus, because there is, and can be, no lingering concern about "factual development" in Morris's case, under Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the federal court here retains full discretion to grant Morris an evidentiary hearing. *See, e.g.,* **Murphy v. Johnson**, 205 F.3d 809, 815 (5th Cir. 2000); **Clark v. Johnson**, 202 F.3d 760, 765 (5th Cir. 2000).

## CONCLUSION

Having carefully reviewed the record of this case and the parties' respective briefing and arguments, for the reasons set forth above, we conclude the district court erred in finding that Morris's presentment of new evidence to the federal court rendered his **Atkins** claim unexhausted per 28 U.S.C. § 2254(b)(1)(A).

31

Therefore, on this record and in light of our holding, we VACATE the district court's order dismissing Morris's claim without prejudice and REMAND with instruction to conduct an evidentiary hearing on the merits of Morris's **Atkins** claim.

**VACATED and REMANDED with instruction.**

PATRICK E. HIGGINBOTHAM, Circuit Judge, Concurring:

While I join in the judgment vacating the district court's order dismissing Morris' petition, I write separately to explain my rejection of the State's argument that Morris is not entitled to an evidentiary hearing because he failed to develop the factual basis of his *Atkins* claim before the Court of Criminal Appeals.

If a habeas applicant has "failed to develop the factual basis of a claim in State court proceedings," a federal habeas court may not hold an evidentiary hearing on the claim unless certain conditions are met.[11] It is undisputed that Morris did not present IQ evidence during his state habeas proceedings for the simple reason that it did not yet exist. Lack of presentation, however, is not the same as "failure to develop." In *Williams v. Taylor*,[12] the Supreme Court addressed the meaning of the word "failed" in § 2254(e)(2). The Court rejected a "no-fault" reading of the statute, and found that "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established

[11] 28 U.S.C. § 2254(e)(2). An applicant may receive an evidentiary hearing despite failure to develop the factual basis of a claim when:
   (A) the claim relies on–
      (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
      (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
   (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense.
*Id.* Morris does not argue that he meets these conditions.

[12] 529 U.S. 420 (2000).

unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."[13]

The State argues that Morris failed to exercise diligence in developing his *Atkins* claim, and therefore should be barred from receiving an evidentiary hearing. The State observes that although *Atkins* had been decided ten months before Morris' execution date, he waited until five days before his execution date to file affidavits in support of his claim. In addition, the State contends that Morris failed to make an "on-the-record" request for funds to develop his IQ evidence, and that his condition was previously discoverable in any event since he was greater than eighteen years of age.

The State's argument ignores the fact that in his successive habeas application before the Court of Criminal Appeals, Morris requested that the Court "appoint him counsel and provide him with the necessary resources to establish his claims." As part of the evidence he wished to further develop, Morris cited the need for "intellectual testing." The Court denied this request by dismissing Morris' application as an abuse of the writ. This was a rejection of the merits of the petition, not a finding of procedural default constituting an independent bar to federal review.[14]

---

[13] *Id.* at 432.

[14] A dismissal under article 11.071(5)(a) normally constitutes an adequate and independent procedural bar to federal review. *See* TEX. CRIM. PROC. CODE ANN. art. 11.071, § 5 (Vernon 2005); *Fuller v. Johnson*, 158 F.3d 903, 906 (5th Cir. 1998). However, in the *Atkins* context, Texas courts have imported an antecedent

Because Morris requested resources to further develop his *Atkins* claim, and specifically referenced the need for intellectual testing, he did not fail to develop diligently the factual basis of his claim at the state level such that he should be denied an evidentiary hearing before the federal habeas court. While it is true that Morris could have sought testing earlier, the harsh reality is that such testing is costly, and death row inmates typically lack independent financial means, as did Morris. Further, Morris had no incentive to obtain such testing prior to the Court's decision in *Atkins* given the Court's position in *Penry v. Lynaugh*.[15] Finally, the record indicates that Morris, with the assistance of volunteer counsel, diligently sought to gather evidence of mental retardation during the time period after *Atkins* was decided, and prior to Morris' scheduled execution date.[16]

---

showing of "sufficient specific facts" to merit further review, rendering dismissal of such claims under article 11.071(5)(a) a decision on the merits. *See Steward v. Smith*, 536 U.S. 856, 860 (2002) ("Our cases make clear that when resolution of [a] state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law, and our [direct review] jurisdiction is not precluded.'" (quoting *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)).

[15] 492 U.S. 302, 335 (1989), *overruled by Atkins v. Virginia*, 536 U.S. 304 (2002) ("[A]t present, there is insufficient evidence of a national consensus against executing mentally retarded people convicted of capital offenses for us to conclude that it is categorically prohibited by the Eighth Amendment.")

[16] In this time period, counsel was able to obtain the record from Morris' original trial, the records of Morris' examining physician at trial (which did not include intellectual testing data), the records remaining from Morris' attendance in school (many of the records had been destroyed), Morris' adult probation records from Harris County, and affidavits from Dr. Richard Garnett, Jimmie Morris, Ayanna Shauntay Sweatt, Craig Morris, and Darrel Morris. Further, Morris indicates in his successive state application for writ of habeas corpus that he asked the state trial court in which his application was filed for appointment of counsel for the purpose of obtaining psychological testing. This request was apparently denied after it was opposed by the Harris County District

35

It is not a matter of an *obligation* to pay for intellectual testing of a prisoner raising a colorable *Atkins* claim warranting further development. It is rather that there was a barrier placed before the petitioner through no fault of his own--indigence. When a prisoner diligently seeks to develop a colorable *Atkins* claim by requesting funding for intellectual testing and his request is rejected by the state court, § 2254(e)(2) will not bar him from developing such evidence in federal court.[17] A petitioner "is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance. Fault lies, in those circumstances, either with the person who interfered with the accomplishment of the act or with no one at all."[18]

The State is correct to argue that our review of the Court of Criminal Appeals' judgment must be conducted under a deferential standard. The AEDPA provides that a habeas application filed by a

---

Attorney's office.

[17] The Supreme Court reached a similar conclusion in *Williams*:
We do not suggest the State has an obligation to pay for investigation of as yet undeveloped claims; but if the prisoner has made a reasonable effort to discovery the claims to commence or continue state proceedings, § 2254(e)(2) will not bar him from developing them in federal court.
529 U.S. at 443; *see also United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 233-34 (7th Cir. 2003) (evidentiary hearing allowed to consider affidavit that was not presented to the state court when the state court had denied petitioner's request for an evidentiary hearing at the state level for the purpose of developing the testimony contained in the affidavit); *Greer v. Ohio*, 264 F.3d 663, 681 (6th Cir. 2001) (evidentiary hearing allowed when petitioner diligently pursued his ineffective assistance claim in state habeas proceedings, had twice requested hearings to develop evidence, and both requests were refused by the state courts).

[18] *Williams*, 529 U.S. at 432.

36

state prisoner

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[19]

While demanding deference, however, this rule does not require that we confine our review of Morris' *Atkins* claim to the record before the state court. The Supreme Court explained in *Williams*:

> Interpreting § 2254(e)(2) so that "failed" requires lack of diligence or some other fault avoids putting it in needless tension with § 2254(d). . . . If the opening clause of § 2254(e)(2) covers a request for an evidentiary hearing on a claim which was pursued with diligence but remained undeveloped in state court because, for instance, the prosecution concealed the facts, a prisoner lacking clear and convincing evidence of innocence could be barred from a hearing on the claim even if he could satisfy § 2254(d).[20]

Limiting a federal court's review to the record before the state habeas court would undermine the Court's intention in *Williams* of providing state habeas petitioners who did not "fail" to develop their claims with a vehicle to do so at the federal level.

In short, the State's contention that Morris should not be allowed an evidentiary hearing is without merit because Morris

---

[19] 28 U.S.C. § 2254(d)(1)-(2).

[20] 529 U.S. at 434.

37

diligently sought to develop his *Atkins* claim at the state level. The wisdom of it aside, the State was within its rights to deny Morris assistance in obtaining intellectual testing; however, it cannot deny him the ability to continue his diligent pursuit of such testing before the federal habeas court.

DENNIS, Circuit Judge, concurring:


I join fully in Judge DeMoss's opinion. Moreover, I heartily endorse Judge Higginbotham's analysis of the state's failure to develop argument and applaud the passion and eloquence with which he argues.  Further, I believe that Judge Higginbotham's reasoning, and that of the Supreme Court in *Williams v. Taylor*, 529 U.S. 420 (2000), should inform this court's application of the exhaustion rubric.